FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 28 2018 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**ESTERN DISTRICT OF NEW YORK.**

---------------------------------------------------------------x

Juan Ramon, **d.b.a. JUAN CANDELARIA, NYSID#5507184J,**
    **Plaintiff,**
**CORPORATE CITY OF NEW YORK AND ITS EXECUTIVE**
**OFFICERS, AGENTS, EMPLOYEES AND ALL PERSONS IN**
**ACTIVE CONCERT OR PARTICIPATION WITH THEM IN THE**
**PERFORMANCE OF THE CITY DUTY ("NYC");**
**EXECUTIVE OFFICEOF THE STATEOF NEW YORK ("NYS");**
**THE CITY OF MIAMI AT DADE COUNTY FLORIDA AND ITS**
**EXECUTIVE OFFICIALS, AGENTS AND EMPLOYEES AND**
**AND PERSONS IN ACTIVE CONCERT OR PARTICIPATION**
**WITH THEM IN THE PERFORMANCE OF THE CITY FUNCTION**
**("THE CITY OF MIAMI"); THE EXECUTIVE  OFFICER OF THE**
**THE STATE OF FLORIDA ("FLORIDA") AND OTHERS KNOWN**
**AND UNKNOWN  EMPLOYEES, AGENTS, AGENCIES OF THE**
**STATEOF FLORIDA ANDOF THE STATE OF NEW YORK**
**("THE OTHERS"),** *individually and in their official capacity,*
    **Defendants.**

Case #17-CV-02307
: (KAM)(SMG) Pro Se

: **SECOND AMENDED**
: **COMPLAINT**  FOR
  **REDRESS UNDER**
: **THE CIVIL RIGHTS**
  **ACTS OF 1871 ET**
:  **SEQ.**

: **BENCH TRIAL**

:

:

-------------------------------------------------------------------x

**I-JURISDICTION:**

    1.  Applicable Law: 42 U.S.C. §§1983. Cause: 42 U.S.C. Civil Rights Acts of

1871 et seq. Nature of Suit: 440 Civil Rights. This Court has original and supplemental

jurisdiction  over  the subject matter of this action and over the paties, including the

employees, Agents and Agencies of the State of Florida and of the State of New York,

as   a Civi Right Action For Redress   seeking Compensatory and punitive damages in

an  reasonable  amount  exceeding  the  sum  of $10,000 and injunctive reliefs in a

reasonable  amount  measured  by either the value of the right sought to be gained by

plaintiff or the cost of enforcing that right  agaist State and Municipal authority acting

under color of  the Law of the State of Florida and of the State of New York in active

consent  with each other under the Civil Rights Acts of 1871 et sequence,  for wrongful

arrest  in  violation of the 4th Amendment and for malicious use and abuse of Uniform

Criminal Extradition Act   in violation of the Extradition Clause of the United States Constitution and the act of Congress of 1793, involving the arrest in  and extradition from his Domicile at the  State of Florida  to the City of New York, County of Kings, State of New York,  of the  Infant Plaintiff   Juan Candelaria  on September 4, 1988, upon the informal demand of  Employees, Agents and Agencies of the State of New York  with the consent of  the City of Miami and Employees, Agents and Agencies of the state of Florida, and   the question of guilt or innocence is wholly irrelevant in determining whether the acts and omissions of the executive of the States upon which the underlying informal demands  for arrest and extradition had been made actually comply with the applicable Federal and State laws which proscribes   that there ca be  no lawful extradition from one state to another except in conformity with the provisions of Article 4, section 2, clause 2 of the United States Constitution and  Laws of the United States  and seeking compensation for wrongful arrest  and extradition from Florida and, therefore, this  Honorable Article III Court  possess  and acquire  jurisdiction  of this  cause over subject matter and persons and may proceed under 28 U.S.C.§§§  1331, 1332,1343(3)(4),1367,  and 1651 according to the established  modes of Rule making responsibilityies Congress Has delegated to the Article  Federal Court  regarding their own power as otherwise set forth in 28 U.S.C. §2071(a)(2000)(permitting courts  to proscribe  "rules for the conduct of their business"); otherwise, in the case sub juduce,, jurisdiction of the cause, of the subjects-matter-and-of the parties is hereby invoked under 28 U.S.C. §§§1331, 1332, 1343(3)(4), 1367, and 1651 et seq.

2. Clearly,  this Honorable Court has not only Jurisdiction to hear, try and decide the questions and award the reliefs sought herein  but  it is it's  imperative duty to do so

[U.S. Const Art. III] in light of the facts that all question pertaining to Interstate Extradition arise out of Constitution and Laws of the united States, so all disputed questions can only be finally determined by the Supreme Court of the United States, and , the U.S. Supreme Court had spoken and said that the only remedies avaialable to a person wrongfully arrested and erroneously extradited is a sue in equity [ Ker v. Illinois]. "Whether the offenses described in the indictments 9954/87 against Plaintiff Candelaria are offenses against the State of New York, and punishable under its laws.

## II-VENUE:

3. The right of State to demand and the obligation of State upon which the demand is made to surrender a fugitive from justice rest exclusively upon the federal Constitution, and the Act of Congress of 1793 and, in the case sub judice, the plaintiff had been arrested in and transported across-state lines from his domicile at the State of Florida on 9/4/1988 and, since then, he has continuously been held in the State of New York under Arrest Warrant #E88200021 issued by the City of New York, County Of Kings, State of New York in June, 1988 upon indictment 9954/87 lodged on or about January 11, 1988, charging Plaintiff with Criminal Possession of a weapon in the third degreee involving one specific Serial #288659LW Colt. Caliber handgun incapable of discharging live ammunition; otherwse, plaintiff is not currently detained by virtue of any judgment, decreee, final order, or process rendered thereof, and the cause or pretence of his extradition was certain bench warrants issued upon indictment 9954/87 against him in the Court of General Sessions of the of the City of New York, County of Kings.

4.The Constitution declares that, "a person charged in any State with treasore, felony or other crime, who shall flee from justice and be found in any other State State,

shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the States having jurisdiction of the crime" [id]. The obligation of a State to deliver a futive from justice, on demand, of the state from which he fled, arises only when the fugitive is charged with a crime within the state demanding the surrender [Crim Proc. Law 570.54(3)1988)]. Accordingly, Venue is proper in the USDC, EDNY under 28 U.S.C.1391.

### III-THE CONTINUING VIOLATION DOCTRINE HEREIN INVOKED:

5. Pursuant to NY CPLR 214(2), there is a three-year statute of limitation on statutory claims [CPLR 214[2])] and, while "Seizure of Plaintiff in 1988 was a single acts "his detention and extradion , which follows seizure, constituted a continuing wrong, the last acts or omissions of which occurred within three years of the filing of the original complaint for purpose of the Continuous doctrine theory, which plaintiff is hereby invoking; and this Second Ameneded Complaint, which is being filed pursuant to the directionof the Court's order of 1/25/2018, related back to the date of the original complaint, filedon July 10, 2017 [see **DKT#8]["The First Amended Complaint"]**. .

6. This action is brought under the Constitution and Laws of the United States, and in the present action no verdict has been made and neither judgment rendered nor sentence imposed , and it remains with this Honorable Article III court to decide whether the acts and omissions imputed to plaintiff at the State of New York (involding the use of an inoperable handgun) and its possession on 11/9/87 and said to constituting the bases for the interstate arrest and extradition of Plaintiffl, actually constitute a crime under the Applicable laws of the State of New York or whether the

improbability that the underlying handgun was operable constitute a bona fide defense to a trial at all?[1]

## IV-PARTIES:

### A: Plaintiff:

.        7. Plaintiff Candelaria was  a prominet leader of the S'faraditahor's Shomer Dalton Yisrael ("Guardian of the Door of Israel),  an organization dedicated  'to encorage self-determination among the growing segment of the Jewish community in America that traces its heritage back to Jewis expelled from Spain in 1492 and  to foster peace  betwen  Arabs  and  Jews  through  discreet  displomacy,     then  domiciled  in Miami,Florida    and was working in the Cadillac Hotel at Collins Avenue when he was arrested on  May  26,  1988, by  the  Miami Dade  Police  Department  pursuant  to  the instruction of the  Executive Officer of Florida and with the knowledge of the Major of the City  of  Miami    and  was  held  in  the  Dade  County  Jail  without  bail  until  he  could  be transported  across-state lines to the State of New York on 9/4/1988, and the primary question in this action is whether  a Cause of action seeking injuctive relief flows directly from a violation of the 4th Amedment  and Interstate Extradition Law, rendering a State and  Municipality  subject  to  to  the  jurisdiction  of  the  court  under  28  U.S.C.  Section 1331(a) if the granting of equitable reliefs premised directly upon the constitution has long been a practice accepted without discussion and, where here  a state or municipal agency is alleged to have deprived individuals of equal protection of the laws, it may be the subject of the federal court's exercise of equitable power. Thus, the neither the city

---

[1]"For the reason below, we agree with [Plaintiff] that the defendant's policies and conduct constituted a continuing wrong" [Cornwell v. Robison, 23 F.3d 694 (2d Cir. 1994);Bodner v. Banque Paribas, 114 F.Supp.2d 117, at  [ **133-135 (EDNY 2000)**; Shamo v. City of New York, 579 F.3d 176,182 (2d Cir. 2009)(citing  Antrack v.  Morgan, 536 U.S. 101, 117 (2002).

northe State of New York is immuned and may lawfully be enjoined from, and, clearly, an independent basis of federal jurisdiction exists in 28 U.S.C. 1331(a)

8. Plaintiff Juan Candelaria, NYSID# ("CANDELARIA") is the infant, with domicile at the State of Florida who is currently and, since 9/4/1988 has been held, against his will in the State of New York, had been charged, arrested and extradited but never tried nor convicted or formally acquitted of the acts and omissions said to constituting the crime involving imputed ownership of a Defective and Inoperable Serial #288659LW Colt .38 two inch barrel caliber handgun) and its possession in the evening of 11/9/87 in Brooklyn, New York, commonly or otehwise never thought to be a CRIME under the Law of the State of New York. During his tenure in the State of New York, Plaintiff has been denied timely medical care attentionand,consequently, was allowed to develope End-Stage Renal Diseaase (ESRD") and becomes whollydependent upon dialysis and kidney transplaint for survival, resulting in short-life expectancy...

**B: The Defedants Are Being Sued Individually And In Their Official Capacity**:

9. **The Defendant Corporate City of New York And its Executive Officials, Agents, Employees and All Person in active Consert or Participate with them in the Performance of the City Function ("NYC") is being sued individually and its official capacity as an agency and agent of the State of New York, and in said capacities it has deliberately failed to adequately train and supervises its employees, agent and agencies and the lack of proper train and adequate supervision** permitted employees, agent and agencies of the City of New York to make and transmitted across state-lines statements in criminal proceeding with knowlledge that it was false or fictitious or fraudulent capable of influencing the decision making

body to which it was addressed and transmitted across-state lines resulting in prejudice to plaintiff;The Defendants NYC, has a past and present policy and practice of presenting evidence to Grand Jury and warrant-issuing Magistrators in furtherance of obtaining indictment and arrest warrant accusing citizen of criminal activities knowing to be material false or in reckless disregard for the true and for the right of the accused person and, in furtherance thereof on January 5, 1987, before the due date for trial on January 6, 1987, "defense counsel [in a similarly situated case charging the accused with Criminal Possession of a weapon in the Third degree] returned a telephone call from the District Attorney. During that conversation, the District Attorney informed defense counsel that the test to determine the operability of the gun was conducted with a test cartridge and not with the single cartridge of ammunition recovered with the gun.and the fact that that the ammunition seized from the defendant had never been tested was not revealed to the Grand Jury"[People v. Lewilyn, 136 Misc.2d 525, at 527, 518 N.Y.S.2d 881 (Richard J. Goldman, J)(Supreme CT., Kings Co. Criminal TERM, July 1, 1987)]. Therefore, the plaintiff "contends that the ballistics report presented to the Grand Jury was False" in both, in the Lewylyn Case [id., at 527] as in the case sub judice [see Exhibit B-6], in recklesss disregard for the constitutionally protected rights of the Plaintiff Juan Candelaria, for which a cause of action for redress is hereby created under the civil Right Act of 1871, and the decision not to train certain employyees about their legal duty to avoid violating ;

10. The Defendant City of Miami and Its Executive Officials, Agents, employee, and All persons in Active Concert or Participation with them in the performance of the city 's Function ("The City of Miami") had engaged in reception

and trasmission of [[703 F.3d 46,78 (2d Cir. 2012)-U.s. V. Coplan]  transmissions of

TELETYPES MESSAGES across-state lines containing statements and inforation known

to be material false  [2] and  have so engaged in interstate  [subsection (7) of section 2(6);

U.S.Const. Art. I,section 8; Associate Press v. Labor Board, 310 U.S. 103, at 127 (1937)]

transportation of human being, in violation of plaintiff's constitutionally protected rights,

privilege and immunities;

11. *The Other Known andd Unknown Employees, Agents, Agencies of the*

*State of Florida and of the State of New York ("THE OTHERS"), included but are not*

*limitted to*  "THE MAYORS  who  "shall be responsible  for the management of all

administrative  departments  of  the  County  covornment  and  for  Carrying  out  policies

adopted by the commission. "The Mayor, or such  other persons who may be designated

---

[2] All question pertaining to Interstate Extradition  arise out of Constitution  and Laws of the united States  *and,  a wrongfully extradited person retained the right to sue the kiddnapping party for tresspass and  false imprisonment [See Ker, at 444], accords,  Frisbie v. Collins, 342 U.S. 519 (1952)(upholding the Ker doctrine despite objection based on the Due Process Clause and kipnapping Act stating: "This Court has never departed from the rule announced in Ker")]. In*  U.s. v. Toscanino, 500 F.2d 267, (2d  Cir. 1974);however,  the Plaintiff argued that the Court lack jurisdiction to prosecute him here in the US after had been kipnappe in Urugua, tried, convicted and sentenced to 20 Years . The Court, citing Rochi v. California, 342 U.S. 165(1952) and Mapp v. Ohio, 367 U.S. 643 (1961), held that recent expansion of due process rights by the U.S. Court conflicts with Ker-Fribie doctrine case. Compare the Alien and Sedition Acts passed by theFederalist Congress in **1798** and signed into law by president Adams on July 14, 1798 and was set to expired on March 3, 1801. These laws included new powers to deport foreigners as well as making it harder for new immigrants to vote, and it was one of the most agregious breaches of the U.S. constitution .Cf. Korematsu v. United States, 1944 LEXIS 1341,  323 U.S. 214 (1944)(a  landmark case concerning the constitutionality of Executive Oreder 9066, which ordered  Japanese  Americans  into  interment  camps  during  World  Ward  II  regardless  of citizenship.See People ex. Rel.   Lawrence v. Brady,56 N.Y. 182, 188  (NY 1874) and P*eople v. Donahue, 8 4 N.Y. 438 (1918)] with* People  of the State of New York  v. Eno, No. 602,   155 U.S. 89 (October 29, 1894)("in some of the indictments, the offense  is charged  to have been committed by Eno in 1883, in the other in the year 1884"). Each indictment alleges that the offense described was committed by the accused with the **same .38 cal. revolver**

by the Mayor, or other person , shall execute contract and other instructment, and sign it," [id, ARTICLE -2-Mayor, section 2.01 and 2.02(A)(B)(C] and "issue and place into effect administrative order,s rules and regulation" [id., Article-5-Administrative Procedure, section 5.02]-Miami Dade County" is defined in Article 10, Section 10.01(A)]-Miami-Dade County Ordinance #97-212, which is Codified in section 1-4.2 in the Code of Ordinances and is Recorded inthe Official Records of Miami Dade- County, Florida at Book17968, Page 0498.,, which has been prepared by Metropolitan Chapter Board pursuant to Chapter 31420, Laws of Florida, Acts of 1956 Extraordinary session.[THE HOME RULE AMEDMENT AND CHAPTER (AS AMENDED THROUGH NOVEMBER 8, 2016), DADE COUNTY,FLORIDA)]["Hom Rule Charter"]; 12. Chapter 8AA-Cable and communication Services Privider; Chapter 10-Contractors; Chapter 11A-Discrimination; CODE OF MIAMI DADE COUNTY,FLORIDA, VOLUM 1,published 1992 by order of the board Commissioners[STEPHEN P. CLARK, Mayor]; Joaquin G. Avino, County Manager " the BOAD OF COUNTY COMMISSIONERS ("BOAD") "Entering to contracts with other govermental units within or outside the boundaries of the county for joint performance by one unit in behalft of the other any authorize function" [17] and "[s[et reasonable minimum standards for all governmental units in the County for the performance of any service or function," [18] "Make investigation" [20]; "Exercise all powers and privilleges granted to municipalities, counties, and county officers by the Constitution and Laws of the State [21] [Miami-Dade Count Home Rule Chapter, Article 1-Board of Count Commissioners, section 1.01.(10)-(24)], the Extradition Clause' Commands are mandatory and afford no discretion to executive officers of the asylum State *NYPD  Sgt.Benardo Blair (Blair")); NYPD Officer John Silva, Sh. #2671 {Silva");*

NYPD Det. Dominic vasaturo, Sh. #1693 ("Vasaturo"), and the 39th And 40th Commissioners of the New York City Police Department ("NYPD") and they are being sued individually and in their official capacity under the theory that, the Police Officer who had arrested an individual was himself "charged with official misconduct and lying in a criminal complaint" [230 f.Supp.3d, 224 228 (2017]) and, while Law enforcement is one of the most difficult and dangerous jobs in the world, they are tasked with carrying out their sworn duty to protect with the utmost honestty and integrity, these tenets are are critical to maintaining public confidence in law enforcement authorities and our criminal justice system as a whole. While on patrol, NYPD Office Jonathan Munold his NYPD supervisors and A.D. screening the case that he arrested the man for interferring in the search and investigation of a 20-year-0ld woman he suspected purchased marijuana. He claimed in statements and paperwork that the man was poinsed in a "fighting stance," as if attacking him, before he lunged and swung a fit at him. However, surveillance video showed that the 21-year-man Jason Disisto never attacked Officer Jonatham Munoz, Badge # 20918 ("Munoz") and that the cop in fact unlawfully searched the 20-year old woman as she stood on the sidewalk and arrested the 21-year old man near West 183rd Street and St. Nicolas Avenue on March 12,2014. The 33-year old Officer Munoz had joined the NYPD in 2006, and was setenced on May 9,201 after had been convicted of lying about the March 12, 2015 arrest at Washington Heights[see New York Post, July 6,2016, 1:53 P.M. - The NYC maintains a widespread practice and custom of arresting, threatening arrest or otherwise interferring [see Ruben An v. City of New york, [First Amedment Right to Record Police in Public]; 2009 case of former NYPD Chief Bernard B. Kerik, "a New York Police Commissioner who rose to national

prominence, was sentenced to four years in prison on Thursday February 18, 2010, and was ordered to pay restitution of nearly $188,000, after pleading guilty to eight felony charges, including Tax fraud and lying to White Houseofficials" in a criminal proceeding before Judge Stephen C. Robison, USDJ][The New York times  February 18, 2010-By Sam Dolnick; "Kerik Confesses to Cheating I.R.S. and Telling Lies]. The tax frud charges stemmed in part from Mr. Kerik's acceptance of $250,000 in renovations to his Bronx apartment, provided by a company accused of having ties to organized crime. He also admitted lying to the white house  officials, denying improprieties, while he was being interviewed to be head ofthe department of Homeland Security. Mr. Kerick was an NYPD Detective when Rudolph W. Giuliani sellected  him as his bodyguard and Chauffeur duringhis first mayoral campaign. The two men forged a connection that lasted throughout Mr. Giulani's mayoralty and beyond.  Mr. Giuliani appointed Mr. Kerick to a senior position in the Correction Department, where he went on to be Commissioner, and even have a prison named after him in downtown Manhattan (the name has since been removed). In 2000, Mr. Giuliani selected him as the City's 40th Police Commissioner even though he lacked a colleged degree,normally a qualification for the job. Mr. Kerik led the NYPD through the 911 attack, meeting  PresidentGeorge W. Bush at the ruin of the World Trade Center.Mr. Kerik impressed the president enough that the White House tapped Mr. Karik to lead Homeland Security in 2004. The bid quickly collased and Mr. Kerik withdrew his name from consideration. The top base salary pay for a New York Police Department (NYPD") detective is $87, 278 per year. Rookie cops in the NYPD receive a base salary of $41,975 per year. Total compensation, comprisedofbase pay andpayments covering uniform costs and other considerations,

amounts to$44,744. Wages increase at regular intervals during a rookie's first five-and-a-half years on the job.. A corrections officers start at just $36,420. After 12 months, that goes up to $43,867, and they enjoy a permance-based raise each year. This is close New York's average annual pay of $46,664, and "Officers earn time-and-a half pay for each hour they work overtime" [https://vtdgger.org., 2015/11/25, "Corrections Officers rack up overtime", "by Elizabeth Hewitt];

12. The  the Defendant "City of Miami And Its Officiers, Agents, Employees, and All Persons in Active Concert or Participation with them in the Peformance of the City Functions" (hereinafter collectively referred to as  "The City of Miami") is being sued individually and as an agency of the State of Florida and, in said Capacities, the Defendant City of Miami has  engaged  in past and present "policies and Practices that discriminated against black, Spanish-surnamed, and female individuals and resulting in deliberate indifference to the rights of persons with whom the discriminated and untrained  employees of the dade County Come into contact.;  its determination to manifestly disregard the xisting interstate extradition laws and procedure intended to safeguard the rights, privileges and immunities of plaintiff and other similarly situated minorities members were tainted by its past and present discrimination toward minorities, resulting in deliberate indifference  to the right of  persons with whom they come in contact of which recognized class/group plaintiff is a member,   in violation,   of the constitution and laws of the U.S., for which a cause of action for redress is hereby created under the Civil Rights Acts of 1871 [and , in fact" i]t is significant to note that the The Defendant City of Miami had  stipulated in the Statement of uncontested factsin an

unrelated action  th*at the City was utilizing invalidated examinations in hiring and promotion classifications*," [664 F,2d 435, at 443], thereby resulting in prejudice to Plaintiff and to other similarly situated citizen ;. .the Defendants Employees, Agencies and agents of the State of Florida, include the Defendant Executive Officials of each State of Florida and New York,  are being sued individually and in their official capacities and  the   Plaintiff invokes  this court's wide discretion under Rule 19 of the Fed.R.Civ. Proc in deciding whether  to proceed in the absence or precence of neccessary parties or  directing that unnecessary parties be added or deleted but equity and interests of justice demands  that  the  court  proceed  in  the  absence  of  additional  paties. [3] The defendants  have  knowingly  or  with  reckless  disregard  of  the  rights,  privileges  and immunities of Plaintiff conspired with each other to deprive plaintiff of his constitutionally protected  rights  or  acted  in  league  with  those  bent  upon  abrogation  of  interstate extradition law..

## V-FACTS:

I:   NEITHER INDICTMENT #9954/87 NOR ARREST WARRANT #E88200021
     SUBSTANTIALLY CHARGED PLAINTIFFWITH COMMISSION OF "A CRIME"
     IN THE ABSENCE OF PROOF THAT THE SERIAL #288659LW COLT .38 CAL.
     "GUN RECOVERDBY CORRECTION OFFICER ARIAS VICTOR, SH.#9419"
     IMPUTED TO PLAINTIFF UNDER VOUCHERD12747 [EXHIBIT B-6] WAS
     OPERABLE AND CAPABLE OF FIRING  BULLETON  11/9/87:

---

[3] "It has been widely held that because the New York City police Department is agency of the City of New York, it cannot be sued independently under §§1983," [accords, Wilson v. City of New York, 800 F.Supp. 1098 (SDNY 1982)(citing NYC Chapter 16, §396)], and that is the only reason the Defendant  NYPD is not physically named in the caption of  of this Second Amended Complaint. Same rationale equally applies to the Defendant Office of the Kings Co.District Attorney.Both were physically  named in the previous pleadings.

13. Under indictment #9954/87, the offense is charged to have been committed by Plaintiff in a Texaco gas Station, where he went to drop off his car for repair, at 4 Grand Street Extension at Brooklyn, New York in 1987, in the Arrest Warrant #E88200021, the offense is charged to have been committed at 207 Grand Central fifteen hours early in the evening in the year 1987. Each indictment 9954/87 and Arrest Warrant alleges that the offense described was committed by the accused with the same .38 cal. Revolver which NYPD Officer John Silva, Sh. #2671 had vouchered on 11/9/87 and imputed to Plaintiff under NYPD Property Clerk's Voucher D12747. Plaintiff was arrested in his domicile at Florida and was transported to the State of New york under that presumption. Extradition" refers to the process in which one (Florida) state or nation gives over an individual to another (New York) state for criminal trial or punishment, and federal law governs when under what circumstances states must extradite fugitives to other state.

14. .The extradition Clase or interstate Rendition Clause of the United States Constitution refers to Article IV, section 2, clause 2, provides for the extradition of a person back to the state where s/he has committed a "crime" or a "felony" [id.], and it was intended to enable each state to brings offenders to trial as swiftly as possible in the state where the alleged offense was committed..[4] [see 18 U.S.C.

---

[4] See "In United v. City of Miami, 2 F.3d 1497, at 1500-1501 (11th Cir. 1993)](holding that Miami Pilice could not challenge inplementation of a Consent decree which it had signed, in reference to Ordinance #6945),also known as Rule of Eight"). In ALBRIGHT V. ALIIVER, 510 U.S. 271, 273 (1994),the acused John Albright Jr. was charged with possession of illegal drugs solely because the informant **misidentified the substance the accused sold to her as cocaine, when in fact it was baking soda," [id, at 293-294]** and an warrant was issued for his arrest by the Illinois authorities and, upon learning of it, he surrendered and was released on bail [268]. In A preliminary hearing , Oliver, testified that Alright sold the look-like substance to a third party, and the **court found probable cause to bind Albright over for trial. However,** the court later dismissed the action on the ground that the charge did not state an offense under Illinois law.

§§3181-3182(1793); 22 C.F.R.95.4] and, once the governor of the asylum State has granted extradition, a court considering the merits of the Governor's decision can do no more than decided  (a) whether  the extradition documents were in order  and (b) whether the  accused has been charged with a crime in the demanding  state...., and the role of the court in the asylum state is mandated by  the U.S. Supreme Court in Michigan v. Doran [439 U.S. 282, 99 S.Ct. 530, 535 ,1978)].

### A:    DETERMINATION WHETHER ACT CHARGED CONSTITUTED A CRIME UNDER NEW YORK STATE LAW IS A MATTER OF LAW:

**15.**  It  is the interstate Extradition Rule  [see  Section  **941.03 of the Florida Statute of 1977**  [ that the the governor  **must determined from the evidence  that the party under arrest is**  ""substantially" charged with the commission of a  a "Crime" under  the  **law  of  the  demanding  State,  proscribed  in 1988,  and  still  proscribes today  in 2018 otherwise,  the Uniform Criminal Extradition Act ("UCEA") adopted by Flarida in 1941 and by New York in 1936, proscribes that:**

> "No demand for extradition of a person charged  **with a crime** in another state shall be recognized by the governor  unless **in writing allenging,...,"**

**[[section 941.03 (1977)].**

---

Justice Ginsburg concluded that Alright's claimed right to be free from prosecution must be judge under  the 4th Amendment. [id., Ginsburg's concurring Opinion , at 276-279]..
 If so such agent appears within thirty days from the time of the arrest, the prisoner  may  be  discharged"  [see  June  25,  1948,Ch.  645,  62  Stat.  822;  Pub.  L.  104-294,  Title  VI, §601(f)(9),  Oct.  11,  1996,  110  Stat.  3500)][cf   Puerto Rico  v .Branstad, 483 U.S. 219 (1987)(federal courts have the power to enforce extraditions under the extradition clause).

16. *Similarly,*   Statutory scheme existing in New York  for the requisition of a person  in  another State. [CPL 570.54(3)], expressly provides for certification by the secretary  of  State  and  the  governor's  confirming  signature;  thus,    "it must appear, therefore to the Governor of the state to whom a such a demand is presented, **before he can lawfully comply   with it,   first**   **that the person demanded   is substantially charged   with a   crime   against   the   laws   of   the   State   from   whose   justice   he   is alleged   to have fled ,by an indictment** *or affidavit   certified   as **authenticic by the governor of the state making  the demand."***

17. *Significantly,* the ministrial act of certifying that the person is substantially charged with a crime is performed pursuant to  State Statutes, and it is well settled that a state official  may properly be made a party to a suit  seeking to enjoin the enforcement of an allegedly unconstitutional acts if that official plays some role in the enforcement of the act.

18.   **Equally significant ,   section 941.03, Florida Statute 1988,  also mandated that** "[t]he indictment, information or affidavit made before  magistrate must substantially charge the person demanded with having committed a *Crime under the law of the demanding State*, and the copy  of the indictment, information, … must be authenticated by the executive authority making the demand," [id., section 941.03],   *a question of fact is presented  in the case **sub judice** regarding  whether probable cause existed  to belive that, under New York Law, the conduct imputed to plaintiff in the State of New York  (OBSERVED INPOSSESSION OF  OF AN INOPERABLE Serial 288659LW .38  Colt CALIBER REVOLVER which was turned into the 90th Pct. by a off-duty Correction Officer named Victor Arias, SH. #9419 on 11/9/87) was illegal or*

*wrongful then in 1987 or today in 2018 under applicable law of the State of New York [..*

**19. Equally significant,   NY Consolidate Criminal Procedure Law ("CPL"), Part 3, Title  Q, Article 570, Section 570.54** then and now in effects proscribes that:

> **"**When the return to this state  of a person *charged with* **crime** *in this*
> **State** is required, the *district attorney of the county in which the*
> **Offense** was committed, of, if the offense is one which is recognize
> **By him or her**, the attorney general shall present to the **governor**
> His or her ***written application  for a requisition for the return***
> Of the person charged, in wich application  shall be stated the
> **Name of the person so charged, the crime charged,"** against him or
> **Her** , the proximate  time, place and circumstance ……"

**[NY CPL 570.54(1)].**

**20.**  Additionally,  CPL 570.54(3)   also mandates that  "[o]*ne copy of the application, with the action of the governor indicated by  endorsement thereof, and one of the certified  copies of the accusatory instructment, .. shall be filed in the  **office of the secretary of State to remain  of record in that officer," [id., CPL  570.54(3)]* and, **finally, it requires that::**

> "3.The application shall be verified by affidavit, shall be executed in
> duplicate and shall be accompanied by two certified copies of the
> accusatory instrument stating the offense  with which **the
> the accused is charged…,"**

**[id, at CPL 570.54(3)][see generally, CPL Sections 570.02 through 570.66].[5]**

---

[5] See also <u>People ex rel. Swanson v. Fitzsimmons</u>, **2 A.D.2d 235, at 236 (N.Y. App. Div. 4th Dep't. 1956) and** <u>Serrano v. State</u>, 64 So. 3d 93,107-08 (2011(citing Ker v. Illinois-119 U.S. 436, at 444 (1886) and Frisbie)].); Chapter 941, Corrections: Interstate Cooperation; Part I, Florida Uniform Interstate Extradition (Florida Statute Section 941.01-941.42)].

21   *Thus it appears that the State (New York) demanding and the State (Florida) delivering  are each under a reciprocal duty to the other ,the performance of which depends upon their respective fidelity to the mutual obligations resting upon them under the agreement or compact between the two  states,* <u>no made  to secure his escape</u> *from* punishment, **but to insure his trial,** *notwithstanding he has fled the state,* <u>***in case he is***</u> <u>***charged with a crime***</u> ***[see CPL Article 570  and Florida Statute of 1974].***   Here, Plaintiff was extrdited on 9/4/1988 under the presumption that he was so charged [see EXHIBIT A-B].

22.  Fof that charged  offenses, however, he has neither been **tried, nor acquitted or discharge and more than a QUARTER OF A CENTURY had lapse since his extradion on 9/4/1988, and the record [EXHIBIT A]** *discloses a 22-pages written executive pledge guaranteeing his retur and privilleges and immunity no to be tried or convicted except for the acts and omission said to constituting the crimes for the chaged offenses [see* ***Exhibit A****]*   and, in such case, the demanding state  owns a duty and obligation , no to the prisoner himself, but to the state and government the which surrendered him, <u>not to violate the compact  under which he was surrendered</u>  and, this compact, it is settled, the court will give effect to at the instance of the extradited person himsel.[.

23. ***Thus,  a question of fact is presented  regarding*** *whether probable cause existed    to belive that, under New  York  Law, the  conduct  imputed  to plaintiff* **(OBSERVED INPOSSESSION OF  OF <u>AN INOPERABLE</u>  Serial 288659LW .38  Colt CALIBER REVOLVER which was turned into the 90th Pct. by a off-duty Correction**

*Officer named Victorr Arias, SH. #9419 on 11/9/87) was illegal or wronful then in 1987 or today in 2018, under the Corresponding provisions of New York Law proscribing the unlawful use and possession of deadly weapon/firearm as defined in NY Penal Law 100.10[12]?.*

24.  It wll be primarily notice that the **Constitutional provision in question requires a demand for surrender of a fugitive to be made** by *"the Executuve authority of the state from which he fled." It does not specify upon whom, nor in what what manner, the demand shall be made [U.S. Const. Art. 4, sec. 2, cl. 2], except it mandated that the accused becharged with the commission of a crime.*

### B: APPLICABLE N.Y. PENAL LAW PROVISION PROSCRIBING POSSESSION OF A WEAPON IN THE CITY/STATE OF N.Y.:

:

25.  Penal Law §§§ 265.01-265.03 (McKinney 1980 & 1989), provides in relevant part:

> "A person is guilty of criminal  possession of a weapon in the
> Fourth degree when (1)  He possesses any **firearm**.
> …        A person is guilty of criminal possession of a weapon in the
> Third degree  when (1)  committed the criminal possession of a weapon
> In the fouth degree …, and has been peviously convicted of a any crime;
> … .
>       **(4) He** posseses any **loaded firearm.** Such possession shall **not,**
> Except  asprovided in subdivision one, constitute a violation of section
> If such possession takes place in  such **person's place such person's
> Home or place of business.**
> … .
>       A person is guilty of criminal possession of a weapon in the
> Second degree when he possesses a machine-gun or **loaded firearm
> With intent to use the same unlawfully against another,"**

**[N.Y. Peanl Law §§265.01-265.03 (McKinney 1980 & Supp. 1989)],**   and possessory crimes are defined in term of **"dominion"**  and **"control"**  **[see Penal Law §10.00[8].**

### C: BRIEF SYNOPSIS OF FACTS OF ARREST WARRANT#88200021
### DETAILS ACCUSATIONS AGAINST PLAINTIFF:

**26.** New York Crim. Pro. Law 100.10(5) defined a **"Felony Complaint"** as a verified written accusation by a person, filed with a local criminal court, **chargin one or more person** with the *commission of one or more felonies[id. s. 100.10(5)], and Section 140.10(1) of the New York Criminal Procedure Law ("Crim. Proc. Law") privides that a police officer may arrest a person for **"a Crime"** when he has reasonable cause to belive that such person has committed such **"crime"** [id.],* pursuan to the instruction of the NYPD and with the knowledge of the City of New York, informed the prosecutor that a bullet recovered from the body of a deceased victim had been fired from a .38 Caliber revolver which had been recovered by a off-duty correction officer and which has been vouchered under NYPD Voucher D12747 by NYPD Officer John Silva, Sh. #2671 on 11/9/87, and New York Penal Law Section 10.00[12] defines a"Deadly weapon" to "means *any loaded weapon from which* **a shot, readily capable of producing death or other serious physical injury, may be discharged," [id., 10.00[12]].**

**27. Under New York CPL 70.20 (every element must be prove beyond a reasonable doubt), and an accused is not required to offer proof to refute an element of a crime under Patterson v. New York [432 U.S. 197, at 215 ( (1977)] and, a defense, once raised, must be disproved [see NY Penal Law 25.00 (McKinney 1975) beyond a reasonable doubt [the home or place of business exception is also preserved as an element of section 265.02[4][6].**

### D: THE DEFENDANT FAILED TO ESTABLISH A NEXUS BETWEEN
### THE SERIAL 3288659LW COLT. 38 CAL. REVOLVER IMPUTED

---

[6] *. See e.g. People v. Rodriguez, 68 N.Y.2d 674 (1986)(Percuriam).*

**TO PLAINTIFF AND THE BULLET RECOVERED FROM THE
THE UNDERLYING VICTIM'S BODY:**

     **28. Preliminarily, to** *prove commission of a crime, the prosecutor must present*

*evidence to identify the accused as the perpetrator [see 1 WHARTON'S CRIMINAL*

*EVIDENCE SECTION 16 (C. Torcia 13th ed. 1972), and therefore it is submitted that*

*information regarding knowledge of where the accused possessed the gun would clearly*

*be within the office of the Kings Co. D.A. and, equally significant, a prosecutor acts as a*

*stalking horse if its office authorize a prosecution or an arrest warrant on prior request of*

*and in concert with law enforcement officers:*

    <u>**FACTS**</u>:
      Defendant and victim got into an argument in an after hours club.
      Defendant left the club after the argument. When victim left the
      Club and was getting into his car, defendant shot the victim
      Two times.
<u>**Property Recovered**</u>:
.      **.3 8 Caliber revolver.** Voucher **#D12747,** 90th Pct. , by
      **P.O. John Silver**, Shield #2671, 61 #12280.(On 11/9/87,
      at 7:35 P.M. *the defendant was observed in possession this gun.*
      The gun was **was taken away from the Defendant by an** *off-duty*
      *off-duty* **correction officer, who brought the gun to the 90th Pct..**
      <u>**Note**</u>:
:      *I am informed by* **Det. Vasaturo** *that a ballistics lab analysis*
      *Was done by* **Det. Albanese** *of the ballistics Squad .*
      **Results of the analysis**: *The bullet recovered from the*
      **Victim's body** *came from the defendant's* **.38 caliber revolver.**
<u>**Action Taken**</u>:
      Drafted complaint and **warrant authorized by Jon Besunder,"**

**[re-rinted from Synopsi of Fact generated by the** Defendant Office of the Kings County

District Attorney under "HOMICIDE BURAU INFORMATION SHEET" on June 24, 1988,

bearing initial **"G.J," and** copy of which is affixed herewith as part of evidence

denominated **Exhibit C-4]]**[hereinafter referred to as "Synopsis of Fact of June

24,1988"][hereinafter referred to as "**THE FELONY COMPLAINT OF JUNE, 1988**"], which serves **as basis for commencement of criminal action**, but not for prosecution itself [see N.Y.Crim. Proc. Law 100.10((5)].

> **E: HOW THE OFFICE OF THE KINGS COUNTY  CAME TO THE BELIEFS THAT THE 'BULLET RECOVERED FROM THE DECEASED'S BODY CAME FROM THE DEFENDANT'S GUN' IF IT HAS AN AFFIRMATIVE INDEPENDENT RESPONSIBILITY TO REVIEW THE EVIDENCE?.**

**29. Preliminarily,**  it  is Plaintiff's contention that  the presumption that probable cause existed can be overcome where the record is susceptable to the view that probable cause was procured  through  fraud ,perjury, the supression of evidence or other   undertaken acts and omissions in bad faith and, "New York law has long equate the civil defendant's failure to make a full and complete statement of the facts to the court, or withholding back informations that might have affected the results, with that defendants' initiation of a malicious prosecutiotion and, in the case sub judice, the Office of the Kings County District Attorney's final determination to authorize  the"**Drafting of Criminal Complaint" and Warrant"**  wainting Plaintiff for the homicide by shooting of the underlying victim said to had been done with  a bullet fired from  the .38 caliber revolver NYPD Officer John Silva, SH. #2671 had Vouchered on 11/9/87 under NYPD Voucher D12747 from the 90th PCt duly executed on 11/9/87, based on the sole representations maded by Det. Vasaturo that "**a bullet recovered from the body of the victim came from the defendant's gun,"**  [see EXHIBIT C-4]: (a) begs the questions of how  the office of the Kings Co. D.A.  came  to this beliefs if, to carry  out  the  sovereign's  paramount  of  objective  of  preventing  the  prosecution of innocent  persons  the  prosecutor'  have  an  affirmatiave,  independent  responsibiity  to review the evidene and, if necessary, seeking additional  evidence. How extensive is this

*responsibility? And, was it carried out in the case sub judice if it* t is theoretically impossible

to commit the Greatest crime of murder by shooting, as alleged in Arrest Warrant #E88200021

without requiring a demonstrations that the handgun in question was operable and capable of

discharge live ammunition and did discharge the fatal bullet ).

    **30.** <u>Secondarily,</u> on June 30, 1988, NYPD Det. Dominick Vasanturo, Sh. #01693,

pursuant to the instruction of Defendant NYPD and with the knowledge of the City of

New York signed, filed and trransmitted across-state lines to his **accomplices Det.**

**Morrison, from the Miami Dade PD at the State of** of Florida with the knowledge of

the Major of The City of Miami, the **above-material FALSE OR MISLEADING**

**informations via a TELETYPE MESSAGE, causing the arrest of Plaintiff in his**

**domicide in Miami Dade County on May 26, 1988.**

    **31.** ***Significantly***, in DD-5, Follow-up #37 of a 38-pages report generated by

Det. Vasaturo as to his preliminary investon of the underlying shooting, he documented

that:

> **1.**"*On Thursday, June 30, 1988, the undersigned personally went to*
> *49 Chambers at (warrant Division) to file an arrest warrant on Juan*
> *Juan Candelario wanted for the homicide of Pedro rodriguez on 11/9/89.*
> *The undersigned spoke to Sgt. Zulberti who informed me that this*
> *Warrant is filed under warrant #E88200021. A TELETYPE MESSAGE*
> *Was sent to Det. Morrison, Metro Dade Miami P.O.*
> *Informing her of this warrant.*
> **2.**.. *PENDING FURTHER INVESTIGATION, CASE ACTIVE,*"

*[re-printed from DD'5, Follow-up #37 of 38 copy of which is affixed herewith as Exhibit*

*C-6(emphaisis added)].*

    **32.** The affidavit of Det. . Vasaturo, upon which the underlying arrest Warrant #E88200021

was based. merely embodies a hearsay statement, communicated by telegraph, that the

prisoner is charged  in New York with the commission of a offenses. If the requisition  had been made   for expressly fraudulent purpose, and with no expectation of prosecution for the Crime which was  its pretext, we do not think any department  of the government  could sanction such use without  the planest perversion of justice.

.    33. *Equally Significant*, neither  Det. Vasaturo nor Det Albanese  or Sgt. Zuberti from the NYPD or Det. Morrison  from the Miami Dade PD or  any other  employees, agents or agency of the State of Florida or of the State of New York has ever testified to or submitted a report attesting that  the handgun in question was operable or capable of discharging live ammunition within the purview, true intent and meanings of NY McKinney's Penal Law § 10.00[12](2018).

*34.. Shortly thereafter,  Defendant Det. Morrison, pursuant to the  instruction of the City of New York  and with the knowledge of the City of Miami Caused the arrest of Plaintiff  on May 26, 1988, at Dade County and, on July 11, 1988, the Office of the Kings County D.A.made the following entries, so acknowledging.*

*35. More Specifically*, the Defendant Office of the Kings D.A., after the facts of Plaintiff's arres  at his domicile at the State of Florida on gun possession charge pursuant to the request of employees, agents and agencies of the State of New York, made the following entries on July 11, 1988:

> "**GRAND JURY PRESENTATION**
>           A grand jury presentation is scheduled for Tuesday, July 12, 1988
>     At 10 a.m.
>      Notification have been entered for **Det. Vasaturo and P.O. Barker**  of
> The 83rd precinct.
>        The defendant, **Juan Candelario,**  is presently in the
>  **Custody of  Florida State authorityles where he is being**
>  On **gun** possession **charge.**
>          *Investigatioon  continuing.*
>
>      *Ym*

*7/1/88,"*

*[re-printed from "Exhibit C-7, dated 7/11/1988entitled "HOMICIDE BUREAU*

*INFORMATION SHEET" generated by the Defendant Office of the Kings Co.D.A.*

*(emphasis added)].[7]*

**36.. *First*,** it is **no** violation *of the Penal Law or the Administrative code of the City*

*Of New York* **merely to possess an INOPERABLE FIREARM** and, in fact, **(a) "cases**

**laws is well setttled that PROOF OF OPERABILLITY is an essential element of the**

**CRIME CHARGED for an VALID INDICTMENT** charging Criminal Possession of a

Weapon in the third **[Penal Law 265.02[4](1987)]** or Second Degree **[Penal. Law**

**265.03] degree** and, logically **(b)** probable cause for the commission of **Murder**

by shooting as charged under Arrest Warrant E8820002 could logically existed

---

[7] The Grand Jury in NYC is a 23 persons (a quorum consists of 16 persons) chosen on county-wide basis. Grand Jury Proceeding in NYC are closed to the public and the secrecy of such proceedings is strictly maintained. Ordinarilywhile the grand jury is in sesession, the only people present arethe District Attorney,the jurors themselves, court personnel and witnesses who may be called to give evidence. After hearing evidence, the Grand jury may issue (return) a **"True bill"** if at least twelve jurors decide the case if strongenough to indict the accused. If the Grand jury decides that **insufficient evidence** to justify any charge was presented, it can vote a **"no bill"** and dismiss the charge. If the Grand Jury decides that there is not sufficient evidence to justify a **felony** charge,but there is enough to believe a misdemeanor was committed, it can direct the District Attorney tofile a prosecutor's information with the **local criminal court. A Fely, on the other hand, is filed in the Supreme Court of the State of New York. When** the crime charged involves the use of a handun and its possesion, the prosecutor must present evidence to the jury of the essential elements, which included proof that the handgun is a **"LOADD FIRARM"**[see e.g. Peoplev, Lewelyn, 136 Misc.2d 525, at 527 , 518 N.Y.S.2d 881 (NY Crim. Kings. Co. 1987)(RICHARD J.GOLDMAN, J)("[t]he fact that the ammunition seized from the defendant had never been tested was not revealed to the Grand Jury," id., at 527),in a case in which the acccused "was indicted for the crimes of criminal possession of a weapon in the third degree (Penal Law §265.02)," [id.]., resulting in dismissal of the indictment when "**a different and distict "test cartridge" was used in the process of determining the operability of the gun [id]. ].** See also **ALBRIGHT V. Oliver, 510 U.S. 266, 280-281 (Ginsburg, J.).**ct [see e.g. liver v. Board of Education of the City of New York **v. Donahue, 8** 306 F.Supp. 1286,1288 (SDNY 1969) and *Fitts v. MCGhee, 172 U.S. 516, 530 (1899)]*

**only if the handgun in question was a firearm capable of firing   the fatal bullet recovered from the body of the underlying victim** and in the absence thereof,   the resulting presumption that probable cause existed  can be rebutted or overcome by evidence  establishing that **(i)** NYPD Det. Vasaturo  have not made a **complete and full statement of facts ,(ii)  that he have misrepresented or falsified evidence, and (ii) that he has withheld evidence or (iv) otherwise acted in bad faith because,** the evidence was then in 1988 and stillis today in 2018  *insufficient to put to a jury or detached facfinder the question of fact, on proper instruction WHETHER THE HANDGUN IN  QUESTION  WAS CAPABLE OF DISCHARGING A BULLET AND, IF SO, WAS THE FATAL BULLET RECOVERED FROM THE UNDERLYING VICTIM ACTUALLY FIRED FROM THE HANGUN IN QUESTION FOR PRPOSE OF MALICIOUS PROSECUTION?.*

37.. <u>*Second*</u>, murder by shooting, as alleged in the Arrest Warrant #E88200021, requires proof that the revolver used was capable of discharged a bullet and did discharge the bullet that caused the victim's death.  **S**everal pieces of record evidence exist from which a rational factfinder could find that Det.Vasaturo made an **incomplete statement of the material facts to both,  Jon Besunder and to  the Office of the Kings Co. D.A.** and/or withheld material evidence from them, in his endeavor to mislead or deceive them to issue/authorize the arrest and prosecution notwithstanding absencce of proof as to the essential element of the crime of  possession of a fiearm under New York Penal Law Article 265 [see CPL 70.10].

38. <u>*Third,*</u>  because  in order for felony prosecution to follow, an <u>indictment must be obtained</u> and,  in  order  for  an  indictment  to  be  obtained,   the  spesific  handgun  in

*question, and any ammunition/rounds, must be tested to determine if the handgun was capable of discharge life ammunition and, the results, must be revealed to the grand jury considering to vote for an indictment and, without that information, prosecution would never follow [see CPL 70.10], and legally sufficient evidence means competent evidence which, if accepted as true, would establish every element of the offense charged and the defendant's commission of it; and an element of the Crime of Criminal Possession of a weapon in the third degree[Penal Law Sec. 265.02[4] is that the weapon be operable and that the ammunition recovered with the firearm, if any, be lived; and, the fact **that neither the ammunition nor the actal .38 Caliber revolver actully imputed to Plaintiff Candelaria on 11/9/87 under NYPD Voucher D12747 :[see EXHIBIT B-6] had never been tested** were not revealed to the jury considering the accusation on 7/11/1988 [EXHIBI B-19].*

**39.** _Fourth_ **in DD-5, Follow-up #38 of a 38-pages Report generated by Defendant NYPD Det. Vasaturo,** pursuant to the instruction of the NYPD and with the knowledge of the Defendant Corporate City of New York, made the following entries acknowledging his physical transportation of Plaintiff to the City of New York September 4,1988:

> **"1. On sunday September 4, 1988 the undersigned in the
> Company of Det. McKeon 83 squad arrested the above at
> 120 Schermerhorn St at 30hrs. This deft was CHARGED AT THAT
> TIME FOR THE MURDER OF PEDRO RODRIGUEZ.
>     2. In view of the above facts and after conferring with the
> . Below supervisor reccomend case close,"**

**[re-printed from entries made by Det. Vasature  on 9/6/188 under dd'5, Follow-up 38 of 38,** copy affixed as **EXHIBIT C-8]]**, and it is Plaintiff's conention that in an  action for False arrest, the Defendants  have the burden of  establishing that they had probable cause to make the  arrest of Plaintiff for possession of a firearm  [see .NY Crim. Proc. Law 100.40(4)].

.

    **40.. _Fifth_,   obviously, the felony complaint** heretofore recited omitted material informations, such as the Serial Number of the .38 Caliber revolver in question and the name of the off-duty correction officer who recovered the .38 caliber revolver, the place and  and.the circumstances  under which it was recovered and, recklessnes may be inferred when the omitted information was critical to probable cause determination and introduction of the false ballistics allegations [that a bullet recovered from the victim's body came from the defendant's .38 caliber revolver] rendered the warrant #E88200021 and subsequent Grand Jury Proceeding Defective as a matter of Fact and Law

    **41. _Sixth_.** , Det. Vasaturo's reliance on what another Det. (ALLBANES) had told him about the ballistic report  is known as the **"felow officer rule"** and, once challenge, the presumption of probable cause  disappears and the state has the burden of **to establish that   the   directing officer or agency, in this case Det. Albanese, imparting the information** in fact possessed the probable cause to belive that the bullet recoverd from the underlying victim's body  came from the defendant's gun.

    **42. _Seventh,_** probable caused existed  to believe that  the  bullet recoved from  the  underlying  victim's body  could  have  come  from  the  defendant's .38 caliber revolver only if **the State could show, beyond a reasonable doubt, that** the  Serial

#288659LW Colt .38 Caliber revolver NYPD Officer John Siva, Sh. #2671 had documented under NYPD Property Clerk's Invoice # D12747 and imputed to Plaintiff candelaria as a 'GUN RECOVERED BY CORRECTIONOFFICER ARIAS VICTOR, #9419" on 11/9/87 under NYPD Property Clerk's Invoice #D12747 **[see EXHIBIT B-6] was a deadly weapon capable of firing a bullet on 11/9/87** within the purview true intent and meaning of New York Penal Law Section 100..10[12]..

43. *Eighth,* from the available record, **no reason exists to belive that the other Det. Abanese, to which Det. Vasaturo referred in the felony Complaint, or any other officer of reasonable competence would had any more probable cause that Det. Vasaturo did***, in the absence of a forensic report*** attesting to the operability of the Serial #28865LW Colt .38.38 Calier **[Exhibit B-6] revolver,** as to charge plaintiff with the homicide by sooting of the underlying victim with the underlie .38 caliber revolver at issue where, as the record shows, *an essential element  (operability of the handgu) underlie the crimes charged  is conspicuously missing now in 2018 as was missing then in 1988 based on evidence already developed* and, "[f]urthermore, it remains the law that, *if that element is not present, there has been no such crime; and if that element is clearly not present, then there is no probable cause to belive there has been such a crime.*   .

44. *Ninth,* **the felony complaint authored by Det. Vasaturo** neglected to mention the actual **Serial Number** of the actaul .38 caliber revolver NYPD Officer John Silva, Sh. 2671 has vouchered under Voucher D12747 and , there are different and distinct   .38 Caliber revolver/handguns manifatured and currently in circulation throughout the United States, each capable  (or not) of firing a Unique bullet;

45. *Tenth*, the felony complaint stated that **"the defendant was observed in possession of this gun" [see Exhibit C-4],** but the felony Complaint glected to identity who "observed" the defendant in possession of this gun[id., at B-18] and, while it alleges thatt **"[t]he gun was taken away from the defendant by** *an off-duty correctons officer," [id, at B-18]*, it omitted the identity of the "off-duty correction officer" and the circumstances under which *"the gun was taken away from the defendant by the off-duty correction officer.[id.]*, and suffice it to say this it is theoretically impossible to shot someone with a handgun incapable of firing live ammunition [CPL 1.20] as alleged in Arrest Warrant #E88200021.[8]

46. Without **proof (a)** that the handgun in question was fired, the manner it was used, the ammunition inside, the testimony of the person or persons who handled the gun, testimony of the person familiar with guns, or ballistics certificaticate, *"the evidence was then in 1988 and still is today in 2018, insufficient to to put to the jury the question of FACTS, on proper instruction, WHETHER THE GUN IN QUESTION IS CAPABLE OF DISCHARGING A BULLET AND, IF SO, WHETHER THE BULLET RECOVERED FROM THE UNDERLYING VICTIM'S BODY WAS, IN FACT, FIRED FROM THE UNDERLYING HANDGUN OR FROM A DIFFERENT AND DISTINCT .38 CALIBER*

---

[8]"The standard of proof [in determine whether or not probable cause exists] is correlactive with which crime must be proved,"[Gerstein v. Pungh, 420 U.S. 103, at 121 (1975)] and "[r]easonable cause under New York Criminal Procedure Law "is substantially the same as probable cause within the meanings of the fourth Amendmen . In People v. Newell, 95 A.D.2d 815, the second Department held that the exception contained in Penal Law Section 265.02(4) was an element of Criminal Possesion of a weapon in the third degree [see the report of the New York State Joint Legislative Committee on Firearms and Ammunition, 1964 N.Y. Legis Doc No 12 and, therefore, . given that place of possession is an element of both criminal possession of a weapon in the third and 4th degrees, one of the issues in the case sub judice is WHETHER THE PLACE OF THE ALLEGED POSSESSION, a TEXACO GAS STATION GARAGE WHERE PLAINTIFF WENT TO DROP OFF HIS CAR FOR REPAIR," was also Plaintiff's Place of business for purpose of the busiuness exception set forth in New York Penal Law 265.02[4](1987)?

*REVOLVER?[9]and, therefore,*   the record is susceptable to the view   that   the defendants had commencedand continued the proceeding in bad faith and/or   without probable cause to belive that the proceeding could succeed without   proof that the handgun was operable and capable of firing a bullet.

    **47.** *Finally,in response to Plaintiff's written request for a copy of the underlying Arrest Warrant #E288200021 and supporting Desposition*, **the Defendant Office of the Kings County District Attorney, by "CERTIFICATION" duly executedon October 4,2007 by Record Access Officer Tamira Banks,**   refused to produce the **informations requested and informed Plainntiff, in the defendants's own words:**

> "*I [FOIL Record Access Officer, Tamira Banks] hereby certify as Employee of the Kings County District Attorneey's Office that that an Exhaustive search was conducted of this Office's records that were Prepared in connection with the prosecution  of* **Juan Candelaria Under Kings County Indictment Number…..but that a copy of of** *State of Florid  waiver of extradition, arraignment card, central*  *Booking  prisoner's property forms, statement of readiness*  *For trial, arrest warrant, supporting affidavit, bench warrant, telephone*  *Dispatch log for 11/9/87, detective individual case log could not be located,"*

*[re-printed from "CERTIFICATION" duly executd on  October  4,2007 before Notary*

*Pulic  Maria E. Park,  copy of which is affixed herewith as Exhibit  A-(materials in*

---

[9] Cf. People v. Ross,  61 N.Y.2d 316, at 317 (NY. Ct. App. 1984)(percuriam) and Commonwealth v. Nievez, 43 Mass. App.Ct. 1, **at 2 (1997)** and Mendez-Diaz v. Massachusetts, 557 U.S. 305 (2009);; People v. Longshore, **86 N.Y.2d 851, at 852** (1995)]. In People v. Rodriguez, 68 N.Y.2d 674 (N.Y. ct. App. 1986),  the Court reversed  defendant's conviction for Criminal Posseession in the thrid degree and dismissed the indictment holding that  the "home or place of business" exception of  a weapon in the third degree  was an essential element of the offense charged herein; see also the Report of the NYS Joint Legislative Committee on Firearms and Ammunition, 1964 N.Y. Legis Doc. No. 12. In People v. Pelchat, 62 N.Y.2d 97, 104-105;  the  court  reversed the conviction and dismissed the indictment because the only evidence before the grand jury connecting  the accused to the crimal activity was false, and the false testimony was the result of a witness's misunderstanding  a question posed by the District Attorney. See also, Costello v. U.S., 350 U.S. 359, 362.].

*bracketmarks added)]* <u>*thereby suggesting that they had engaged in SPOLITION*</u> <u>*OF EVIDENCE*</u>.

48. The documents heretofore described and being subpoened herein documents being subpoenaed herein are necessary to determine whether probable cause actually existed then and, if not, whether the employees, agents and agencies of the State of New York can establish and prove that a crime was committed or, alternatively, to exuded the innocent Plaintiff from further suspicious and, as can be inferred, Plaintiff has been unsuccessfully attempting to obtain a copy of the arrest warrant, but has not been able to do so, to the extent that the defendants have engaged in SPOLIATION of EVIDENCE, any wrongdoing foundl should be uncovered and any individuals involved held accountable. As New Yorkers, we are all troubled by what we have read, are hopeful for a just and speedy conclusion to this unfortunate matter, in the presence of plaintiff' current termial illness.

49.. The Defendant acted in bad faith and without a valid expectation of ever obtaining a valid conviction upon a trial in the merit of the allegations/accusation

50.. It is Plaintiff's Contention that the underlying criminal proceedings had terminated in Plaintiff's favor or, upon any attempt to indict/try Plaintiff, the proceeding must terminated in Plaintiff's favor upon a trial, either because the Defendants would not be able to discharge their burden of showing that the handgun was a firearm, within the meaning of New York Penal Law section 10.00[12], or that the TEXACO GAS STATION, where Plaintiff was allegedly observed in possession of the underlying handgun, was not Plaintiff's Place of Conducting business within the purview,

true intent and meanings of NY Penal Law exception set forth in   section 265.02[4](1987), now and since 2006 repealed].

### a. A "crime Is An Act Or Omissions Which Is Punishable By The State:

**51.**  In determining whether or not an act for which a person  may be arrested is a crime, it may become necessary  to try it by various tests but a **crime** must be **indictable.**    A crime   can only be indicted at the place where the offense is committed.

### i. Charges in New York State:

*52. A violation is a offense other than a traffic infraction for which a sentence to a term of imprisonment  of up to 15 days may be impose [NY Penal Law Article 10]. If the lest serious type of proscribed activity and encompasses  such offenses as harassment, trespass, and disorderly conduct. A person arrested for committing a violation may be taken into custody but will usually be issued an an apearance ticket indicating the time and place that he or she must appear in court. A violation is not a* **Crime.**

*53. A* **Misdemeanor** *is a offense other than traffic infractionof which a sentence in excess of 15 days but not greater than one year may be imposed  [NY Penal Law §10]. A misdeaninor is a  crime.*

*54.. A Felony* is an offense for which a sentence to an term of imprisonment in excess of one year may be imposed [New York Penal Law  Article 10]. A **Felony is a crime.** There are five Categories of  two subcategories of **felonies** (A-I, A-II, B, C, D,

and E) ranging from the most least serious in terms of severety of offense and the degree of potential punisment incurred and the palty can vary from a term of probation to life imprisonment .In the New york penal Law's description of each **crime**, the "*degree*" *of an offense determine the seriousness of the offense. For example, Criminal Possession of a Weapon in the Third Degree ("CPW-3rd") is a Class D Felony and Criminal Possession of a Weapon in the Second degree ("CPW-2nd") is a Class C-Felon and requires the accused's identification of an* <u>*intended victim*</u> constitutes the formulation of discrete intent; thus, every time a accused who possesses a waepon contemplates a **different intended victim**, he is subject to a new prosecution **for the second degree possessory crime** [contrast with penal Law 265.15(4)McKinney(1980)(defining intent)]. *Murder by shooting, as alleged in Warrant #E88200021, is a Class A-1 Felony, and the Amercan Criminal system requires the minimum of a voluntary act on the part of the accused for criminal liability to attach, and a basic premise of Amercan Law is that "a* **crime cannot be committed by ivil intent alone" [Hitchler, The Physical Element Of Crime .39 Dick L. Rev. 95 (1934)(discussing requirement of acts in order for criminal liability to attach].**

.

        **F:.. *WHETHER THE "<u>PLACE</u>" OF THE ALLEGED POSSESSION-***
              <u>**A TEXACO GARAGE WHEN PLAINTIFF WENT TO DROP HIS**</u>
              **CAR OFF FOR REPAIR-"** WAS PLAINTIFF'S PLACE OF BUSINESS
              **FOR PURPOSE OF THE "BUSINESS EXCEPTION" SET FORTH IN**
              **NY PENAL LAW § 265.02(4)(McKinney 1987):**

      **55.** At the outset, we address the exception contained in Penal Law Section 265.02(4), now and since 2006 repealed, an element of Criminal Possesion of a weapon in the third degree [see the report of the New York State Joint Legislative Committee on Firearms and

Ammunition, 1964 N.Y. Legis Doc No 12] and, therefore,  given that place  of  possession is an element of both  criminal possession of a weapon in the  third and 4th degrees, one of the issues in  the  case sub judice  is **WHETHER   THE  PLACE  OF  THE  ALLEGED  POSSESSION, a TEXACO GAS STATION GARAGE WHERE PLAINTIFF allegedly " WENT TO DROP OFF HIS CAR FOR REPAIR," was also Plaintiff's Place of business  for purpose of the busiuness exception set forth in New York Penal Law 265.02[4](1987)? In the Case Sub Judice, the proosecution Chief witness, named Cesar Arias, a/k/a/, Caesar Arias, testified that Givani, in  reference to Plaintiff  Candelaria,**

" come ***down to drop his car off to be***

> ***repair[ed]***  and he then have luggage or something
>
> **in the car.** *He takes them off and told me to **call the***
>
> ***Taxi.*  He gave me  a *dollar to have change***. *I went*
>
> *cross the street to change the dollar and I be back.*
>
> *When I be back, I called the Taxi," [see*

**D-11, lines 10-22; D-12, lines 19-25].**

**56.** The  vality of a legal presumption is tested by a reasonableness standard . There must be a REASONABLE  **LINK BETWEEN THE FACTS** <u>**PROVED**</u>  and **the INFERENCES ASSUMED, in the Case sub Judice, the Defendants Employees, Agents and Agencies of the States of New York, have proved, through the Grand Jury testimony of NYC Correction Officer Arias Victor, Sh. # 9419 ("Defendant Victor" or "Victor" or "the Alleged Victim") and thrrough  Victor's brother, named "Cesar Arias," a/k/a, "caesar Arias" ("Cesar" or "the Alleged witness") that  in the**

evening of 11/9/87, Plaintiff possessed and pointed or aimed at the alleged Victim during

an argument over exchange for a dollar in a TAXACO GAS STATION **"a colt.38, like a**

**two inch barrel, black color" caliber revolver"** [Victor] which the alleged witness

allegedly grabbed from Plaintiff's hand [Cesar] and handed it over to the Victim [Victor]]

and the Victim in turn turned it [the handgun] to the NYPD Desk Sergeant named

Benardo Blair [Blair] from the Nine O Precinct at Brooklyn, New York on in the evening of

11/9/87 **[see Exhibit D-1 through D-18 affixed herewith], and there are no other**

**evidence linking Plaintiff to possession of a handgun either on 11/9/87  before or**

**thereafter:**

### G. The "THE FACT PROVED' THROUGH VICTOR AND CESAR ARIAS DURING THEIR  GRAND JURY TESTIMONY IN 1989: NEGATE THE ELEMENTS OF CPW-3RD UNDER PL §265.02[4]:

.

#### b. The 1989 Grand Jury Testimony Of TheAlleged Victim Victor Arias:

57. **Victor Arias ("Victor"),**  the alleged "Victim" placing plaintiff in possession

of a handgun on 11/9/87 testified before Kings County Grand Jury that **(a)**  he was 28

years old as of April 7, 1989 and was currently  employed by NYC Dep't.of Correction as

a correction officer  under Shield #9419  **[D-1,** lines 1-24] and was currently assigned nat

C-Seven Three, Rikers Island **[D-2,** , lines 1-8], and he has been employed for 20

months **[D-2,** lines 9-11]; **(b)**  as of Novemver 11, 1987 he had been employed     for

**"like three months and half"** as a correction officer **[D-2,** ,lines 12-20] when  in the

evening of 11/9/87, at appriximately 7:30 p.m., he wa in his brother Cesar Arias, a/k/a,

Caesar ("Cesar")'s Texaco Gas station's **"garage located on Four Grand Street**

**Extension in Brooklyn" [D-2,  lines 21-25; D-3, lines 1-7]**, and there also was a friend

of  him named **"Fabian"** and Victor's **"father was there"** [D-3, lines 8-18]; (c) he was *"there having a conversation with* [his] **brotherr** and [his] **father"** when the **"guy,"** in reference to Plaintiif Candelaria, " **joined the group;"** (d) he ,*in refrence to plaintiff, **"come in a car with another person that   [he] didn't knew at that time,** and Victor had an argument with plaintiff **and the argument was over "exchanged for a dollar"** [D-4, lines 11-16]; (e) Victor testified that he did not know plaintiff but that he "[h]ad [seen] himbefore in the neighborhood and he allowed plaintiff into the office to make a "phone call" [D-4,,Lines 17-25]; (f) a second argument took place [D-4, Line 25 through line  1-3] and that second argument too was about "exchange for a dollar" [D-5,Lines 4-7] and (g)* during that second argument Plaintiff *"pull[ed] a gun"   "[f]rom his waistband" [D-9, lines 1-4]* but **Cesar,** Victor's brother,  **"grabbed it and took it away" from his hand" [D-6, lines 6-9]; (h) Cecer** then handed over the **handgun to Victor [D-6, lines 10-11]** and Plaintiff the left the Texaco Gas Station Garage  in a taxi cab that was waiting for him **[D-6, lines 12-17], and (i)**  Victor too left the Texaco Gas Station Garage and "**went to the Nine O Precinct** *located on Union Street* **and gave the gun to the police" [D-6, lines 20-21]** *and the name of the police to whom Victor gave the* **handhand** in the Nine o Precinct was  **NYPD desk sergeant  Blair ("Blair")** [see D-6, lines 22-25; D-7, lines 1-2]; (j) the *"Blair g[a]ve the gun to officer Ailva"* in front of **Victor inside** the Nine O Precinct *[D-7, lines, lines 4-25],* finally, (k) identified plaintiff as the person he recognized as the one who had pulled the handgun in question  [D-5, lines 10-25; **D-6,** lines 1-2] and depicted the handgunin question as a **"a Colt .38, like a two inch barrel,black color" [D-8,  lines 1-8].**

58. *Cesar Aria* ,a/k/a, Caesar Arias, was called by the prosecution as an eyewitnes of the 11/9/87 event placing Plaintiffin in possession of a .38 caliber handgun in the texaco gas Station Garage described by Victor Arias and, during direct examination, **Cesar Testestified** **[a]** that he was thirty-nine years of in 1989 and, in the eveninng of 11/9/87, he was "**work[ing] as a mechanic'** *in the underlying Texaco Gas Station* **[D-10, lines 9-25]** when Plaintiff Candelaria, to whom he referred as 'Giovani," came to the Gas Station with the **intention of conducting the official busuness of having his car repaired, in Cesar's own words and phrases:**

> Q: Now, what happened at that time?
> A:Well, at that time,my brother was in the **gas station**
> And Giovani Come in **to drop his car to be repaired.**
> Q: **Who?**
> A: Givani. He **come** *down to drop his car off to be*
> *Repair[ed]* and he then have luggage or something
> **In the car.** *He takes them off and told me to* **call the**
> **Taxi.** *He gave me a* **dollar to have change.** *I went*
> *Cross the street to change the dollar and I be back.*
> When I be back, I called the taxi,"

[re-printed from **Exhibit D-11, lines 9-20**(emphasisand materials in bracketmarks added)];**[b]** went across the street to ex-change the dollar, came back to the Gas Station and called a Taxi for Plaintiff and, when the Taxi came in, "**he have some words with my brother,"** in reference to Victor **[D-12,, Line 20-21]** and **[c]** "**[t]hen** *he pulled a gun and point to my brother, and I take the gun out of his hand"* **[D-12, at lines 22-23]; [d]** *Cesar next claimed that he gave* **the gun to the presumptive victim**, his brother **Victor [D-12, lines 24-25]** and it was Victor who then proceeded to **"take down** the gun to the precinct"**[D-13,, lines 1–8].**

> H: 38 CALIBER HANDGUN MAY BE LOADED AND-AT THE SAMETIME-
> NOT CAPABLE OF DISCHARGING A BULLET DUE TO

**MALFUNCTION  OR MISADJUSTMENT IN THE FIRING
PIN OR SOME GUN'S  MECHANISM:**

**59.**  It is Plaintiff's  contention that **a gun may be loaded and, at the same time,
not capable of discharging a bullet due to malfunction or misadjustment in the
firing  pin or some other gun's mechanism.**

**c. Arrest:**

**60.**       **Finally, Cesar also testified that,**  fifteen minutes thereafter Victor
had  left to turn in the gun in the neareby local 90th Pct.,  Plaintiff allegedly returned to
the Texaco Gas Station with two other individual and demanded back his  presumptive
**handgun,** and it was in that point  **that Cesar called 911 reporting a man with a gun,
Officer John Silva, Sh. #2671 (Silva") and Ann Marie Hardy("Hardy")(collectively
hereinafter referred to as "the Arresting Officers")** responded to the Texaco Gas
Station, upon arricing to the Scena, Cesar directed their attention to  Plaintiff, who was
standing in **a public stree tcorner, as the man with the gun,** the arresting officers
immediately pursued and arrested Plaintiff **[D14-lines 1-25].**

**61.** The criminal justice process begins when a person is arrested. A police
officer may apprehended and take into custody a person who commits a violation,
misdemeanor of a felony in the police officer's presence . New York  law also allows a
police officer to make a arrest for felony **not committed in his or her sight** and without
a warrant whevever  the officer has **"reasonable grounds"** to believe that a **felony** has
been committed  and that the defendant is the person who has committed the **crime;**
otherwise, the police officer is generally required to obtain an **arrest warrant** before
arresting a an individual in his or her home and, in  the Case sub judice, NYPD Officer

John Silva, Sh. #2671 ("Silva") arrested Plaintiff Juan Candelaria ("Candelaria" or "Plaintiff") in the evening of November 9, 1987, pursuant to a warrantless arrest conductedm pursuant to the  the instruction of the NYPD and with the knowledge of NYC.

62. **P.O. Officer Ann Marie Hardy, Shield #31587 ("Hardy")**  testified that it was Officer Silva, who apprehended Plaintiff:

> "Q: Now, who apprehended him?
> A: Police Officer Silva.
> Q: There was **no gun on him; is that correct?**
> **A: Yes, sir.**
> **Q: There was not gun in the Jacket or the sweater when they**
> **Were retrieved?**
> **A: No, sir.**
> **Q: By the way, did you have any conversation with [Mr. Candelaria]?**
> **A: No, Sir.,"**
[Pg. 46, Lines 11-23].

63 . **P.O. John Silva, Sh. #2671 ("Silva") testified that that** he respondended to a call reporting a man with a gun in a Texaco Gas Station and, upon arricing to the location, they met **Cesar Arias who immediately directed their attention to the man standing stilll in the public street corner, as the man with the gun, they pursuedm stopped, and apprhended theman later identified as Plaintiff Juan Candelaria, and found not gun on him or in his properties:**

> Q: When you  arrested him, did you put him down at all when you grabbed
> Him?
> A: When I grabbed him, we both went down to the ground and I cuffed him.
> Q: Did you find anything on him?
> A: No
> Q: Now, this Jacket that was retrieved by another officer, was **a gun found**
> **In the Jcket?**
> A: No.
> Q: What was found in the Jacket, do you known?
> A: Some United States Currency and Some White Poweder,"

*[D-16,, Lines 11-25].*


**64**. *Officer Silva, pursuant to the instruction of the NYPD and with the kowledge*

*of  NYC, also adds that he took plaintiff Candelaria to the **Nine O Precinct where he***

***received  from the** Desk Sergeant **and then vouchered under  Voucher D12747**, the*

.38 caliber revolver Victor Arias had turned over to the Dersk **Sergeant Benardo Blair:**

> "**Q:** *Now, let me see if I understand, you are the one that vouchered the*
> ***Gun?***
>  A: Yes.
>  Q: But it wasn't  turned over to you?
>  A: The **Sergeant gave it to me.**
>  Q: That was the person that turned it over to you?
>  A: Yes.
>  Q: It wasn't. Mr. Arias?
>  A:The Sergeant gave me  **the gun.**"


[ Cross-Examitation, *[D-17, Lines 5-19].*


**65. Finally,**  officer Silve were asked and answered during Direct examination

that:

> Q: Officer, after you received the **gun from  Sergeant Blair**
>     And the rounds from the sergeant ***, what did you do with them?
>  A: **I vouchered them.**
>  Q: What does vouchering means?
>   A: That is **taking property and keeping it for safe keeping.**
>   Q: ***Can you tell me under what number was it vouchered?***
>    A: Can I refresh my **memory?**
>   ***Q: You can refresh you recollection.***
>   **A: It was vouchered under** D12747
>  Q: By the way, did you do anything other than **vouchering**
>      These objets?
>  A: Yes, I requested a Lab Analysis.
>    Mr. [A.D.A] Neier:**No further question, your honor,"**

**[D-32, lines 17-25;  D-33, lines  1-5,** and it is Plaintiff's contention that evidence that a matter is not contained in a public record or report, such as "Voucher D-12747,"  where the matter would ordinarily be recorded if existed or occured, may be offered to prove the **noneexistence or nonoccurence of the matter [Fed.R.Evid. 803(10)]**.

66. After hearing the evidence, consisting of the testimony of the alleged victim, Victor Arias, that of his brother cesar Arias, and that of the arresting officers, the grand jury decided that **there were not sufficient evidence to justify charging Plaintiff** with either resisting arrest, Menacing, CPCS-7thor CPW-2nd, but that  there was was enough to belive a lesser offense of Criminal possession of a weaponin the third degree ("CPW3rd") was committed based on the testimonyof the alleged vitim and, consequently, issued true Bill #9954/87 on January 11, 1988 and, thirty years later, the indictment #9954/87 standstill."When a factual circumstances negates an element crime, as the in the case sub judice the Testimony of Victor and Cesar arias negate the **ellement of CPW-3rd under N.Y. Penal law 265.02(4) (they testified that Plaintiff came to the Texaco Gas Station to conduct the business of dropping off his car for repair, asking for exchange of a dollar, and asking that a Taxi Cab be called on his behalf** *which fall within the Business exception of Penal Law 265.02[4](1987)]*, the federal Constitution's due process guarantee under the Fifth and Fourteenth Amendments requires the prosection to ,"bear the burden of proving the absence of  that circumstance beyond reasonable doubt.

      **d. Superior Court:**

67.. The first procedural step following Indictment by grand jury or the accused consent to filing of a superior court information, is arraignment in the court that tries felonies, and it is known as the Supreme Court of the Stateof New York which operates on the Individual Assignment System ("**IAS**").

. 68. In this system IAS, one judge handles a particular case from inception to conclusion, with assignment of the case to a particular judge accomplished in a neutral manner. Following assigment, the parties and judge may enter into plea bagainin. If such bagaining falsto resultin an agreement, motionswill be made and decide and **a trial date will be fixed**[10] and, in the case sub judice, a **trial date has never been fixed under either Indictment #9954/87 or Arrest Warrant #E88200021 even though thirty years had lapse since Plaintiff's warrantless arrest, subsequen arrest and extration in 1988.**

### e:It Was Not Until October 4, 2007 That "Voucher D12747" Was For The First time Disclosed [EXHIBIT A-1]:

69.. Although NYPD Officer John Silva, Sh. #2617 ("Silva") made several references to "**Voucher D12747**," as the location wherein he had vouchered in the evening of 11/9/87 the underlying .38 Caliber handgun he had received from the nontesifying NYPD Sgt.Benardo Blair in the evening of 11/9/87, neither "Voucher D12747" nor **the actual contents of "Voucher D12747 were ever introduced into**

_____

[10] A leading case is <u>Chesapeake & Delawre Canal co. v. UNITED STATES</u>, 250 U.S. 123, **at 129 (1919)**(a suit to recover dividends on share of capital stock owned by the United States in the Defendants' corporation, the US S.Ct., aproving the admission of the account books of the U.S. Treasury Department, explained that "[s]uch books so kept presumptively contained a record of all payments made and **the absence of any entry of payments**, where it naturally would have been found if it has been made, was evidence of **nonpayment proper for consideration of the jury**," id.,at <u>129)</u>.

**evidence** during the underlying State criminal proceedings and it was not until October

4, 2007, that the Defendant Office of the Kings County District Attorney for the first time

disclosed and turned over  NYPD Property Clerk's Invoice **D12748[B-7]; D12747 [B-6],**

**and D-12746[B-5], along with the following additional materials:**

70.  "In response to your request for records pursuant to the Freedom of
Information Law ("FOIL") dated April 3, 2017, please be advised that the file in question
has been located, and I can provides you with copiesof the following documents:

| Document[:] | Item Numbers[:] |
|---|---|
| Mug Shot | 1 |
| Arrest Reports | 7 |
| Fingerprints | 1 |
| Request for Records Check | 1 |
| Aided Report | 1 |
| Police Laboratory Analysis Report | 1 |
| *Property Clerk Invoices* | *4* |
| Letter of transmittal | 1 |
| Certification | 2 |
| Voluntary Disclosure Form | 9 |
| **Correspondence** | **9** |
| **Warrant Information Report** | **1** |
| **Homicide Bureau Information Sheet** | **9** |
| **Request in Lieu of Subpoena Duces Tecum** | **9** |
| **Indictment** | **7** |
| **Subpoenas** | **19** |
| Material Witness Order | |
| Motion | 25 |
| Total | 111" |

re-printed from Exhibit A-1 through A-2 ("**Letter dated 10/4/2007 from the office of**

**the Kings Co. D.A.   Releasing 111 sheets of relevant Documents")(underlines**

**original)]. Here  the the case stalled following arraignment, never reaching a grand**

**jury.**


<u>**CLAIMS AND CAUSES OF ACTIONS FOR REDRES UNDER 42 U.S.C. §1983:**</u>

### I=<u>FIRST CAUSE OF ACTION</u>: SPOLIATION OF EVIDENCE:

71.. Plaintiff respect and realleges each and every statements contained in the preceded pages and paragrphs

72. The defendants have deliberately engaged on ongoing spolation of evidence resulting in prejudice to plaintiff; and, as a pretext,claimsthat that that an

Exhaustive search was conducted of this Office's records that were

Prepared in connection with the prosecution  of **Juan Candelaria**

**Under Kings County Indictment Number…..but that a copy of of**

*State of Florid  waiver of extradition, arraignment card, central*

*Booking  prisoner's property forms, statement of readiness*

*For trial,* arrest warrant, supporting affidavit, bench warrant, telephone

,         Dispatch log for **11/9/87**, detective individual case log could not be locate, in violation of the Uniform  Criminal Extradition Act, which required that the underlying

 material be filed and preserved ;

73. Without thoe records and information,, the Plaintiff 's claims and defense would be irraparably prejudiced, and the defendants  have engaged in **Spoliation of evidence in furtherance of covering up their fraudulents acts and omissions, resulting in prejudice to Plaintiff , and it is more likely than not that the underllying** record and information would have been preseved but for improper training and lack of supervision, and the defendants  must bear the responsibility for the lost of the record and informationbecause they were required  by law  to preserve the same and even to

file a copy with the Secretary of state and but they had failed in their statutory duty and imposition of appropriate saction, such as dismissal of Indictment #9954/87 and squashing of Arrest warrant #E88200021, as penaties would  deter future litigants from engaging in similar abuse in the future;[11]

### II=SECOND CAUSE OF ACTION: VIOLATION OF THE UCEA:

**74.** Plaintiff repeats and realleges and and every staments contained in the preceded pages and paragraphs heretofore asserted with the same forces and effects as if fully set forth herein at length.Criminal Possession of a weapon in the  Third Degree ("CPW-3rd"), as charged under Kings County Indictment 9954/87, require  proof **(a)** that possession of the weapon involves, a revolver or handgun, be  outside of the accused's **"home or place of business,"**  and **(b) that the handgun involved  be a Loaded "Firearm" ca-pable of discharge live ammunition [see Penal Law 265.02[4](1987)].**

**75.  It it is possible  to possess a specific Serial #288659LW Colt .38 Two Inch Barrel "LOADED HANDGUN" without concomitantly possesing a " LOADED FIREARM"**  which must be alleged and proved  in an order for a prosecution to proceed to indictment and subsequent trial; otherwise, the  **state cannot prove facts essential to the charge;**

---

[11] The defendants "had an official Policy in their office requiring their employees  to delay production and to engage in suppression of evidence tending to favor an accused [see e.g. Ramos v. City of New York, 285 A.2d 284, **at 287 & 303 (citing James Ahearn, For State and Nation, A Dark Chapter, Bergen Record, February 28, 2001, at B1)** and  Bai.ley v. City of New York, 79 F. Supp. 3d 424, **at 439** (EDNY 2015)

76.     Defendant  City of Miami  and Executive Officer  "Governor", as defines in section 141.01  of Part I of the  Uniform Interstate Extradition Act adopted by the  State  of  Florida  in  1941  (§§  941.01-941.42)  and,  individually  and  in  its  official capacity,  the  "Governor"  has  violated  ,§ 941.03-Form  of  Demand- ,"  which proscribed that "no demand for extradition of a person charged with a crime in another state shall be recognized  by  the  governor  unless  in  writing  alleging,  ..,   and  accompanied  by  an authenticated  copy of an indictment found or by information suppported by  an affidavit made  before  a  committing   magistrate  of  the  demanding  state..." [§3,  Ch. 20460,  1941, §1596, Ch. 97-102, Florida Statute (1977), which requing an affidavit to substantially charged  a  crime  under  the  law  of  the  demandin  state.  The  executive  is  not  infalliable and,in the case sub judice,  erred and issued arrest Warrant #E88200021 when he ought not to issue it, and if the citizen has no right to prosecute this writ, but must submit to the executive   order,   it  is  clear  that  we  have  one  officer  in  a  State,  organized  under  a republican form of government , who can hold at pleasure and remove at his will beyond the  jurisdiction  of  the  state   every  citizen ,  and  whose  action  cannot  be  questioned or review;

.     77.. Under New York McKinney's Penal Law Section 10.00[12], a "[d]eadly weapon  "  means  any  loaded  weapon  from   **which  a  shot,  readily  capable  of producing  death  or  other  serious  physical  injury,  may  be  discharged...," [id., section  10.00[12]],"**  "crime"  means   a  misdemeanoror a  felony" [id.,  at  section 10.00[6], and "felony" means an offense for which a sentence of a term of imprisonment in  excess  of  one  year  may  be  imposed" [id.,  at  section  10:00[5],  and  it  is  is  only necessary,  under  Florida  Law,   to  consider  whether  the   Warrant  #E88200021  shows

sastifactoriy  that the Plaintiff has been  in fact, charged with **crime in the State of New York [Sections 941.01-941.29 may be cited as "The Uniform Criminal Extradition Laws"] and Section 941.03, Florida Statutes (1977)**, proscribes that **"[n]o demand for extradition of a person  charged with a** *crime  in  another  state shall be recognized by the goverrnor unless in writing alleging, except in cases arising under section 941.06, that the accused ..., and accompanied by an authenticated copy of an indictment found  or by information supported  by  by affidavit in  the state having jurisdiction of the* **crime**, *or by a copy of a warrant supported by an affidavit made before a  committing magistrate.*

        **78.***The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and  the copy  of  the indictment, information, affidavit, judgment of conviction,  or sentence must  be  authenticated by the executive authority making the demands," [id., section  941.03,  Florida  Statutes  (1977)] and, under Florida  Law, possession of a Colt .38 Two inch Barrel* **Serial #288659LW, Caliber Revolver** *imputed to Plaintiff as a 'GUN RECOVERED BY CORRECTION OFFICER ARIAS VICTOR, SH#9419" on 11/9/87 under NYPD  Property Clerk's Invoice Number D12747 at the County of Kings, State of New York  [see EXHIBIT B-6] would have been a violation  of New York Penal Law Section 265.02[4](1987). Chapter 269 section 10 of Mass. General Laws, as amended and required under Chapter 649 Acts of 1974  to prohibit possession of a firearm and, like the New York Penal Law,  defines "Firearm" to included a "pistol, revolver  or  weapon   of  any  description, " from  which* **a  shot  or  bullet  can  be discharged;**

## III=THIRD  CAUSE OF ACTION: VIOLATION OF THE EXTRADITION ACT OF 1793 AND U.S.CONSTITUTION EXTRADITION CLAUSE:

**79.** Plaintiff repeats and realleges eadh and every statements contained in the preceded pages and paragraphs with the same force and effects as if fully set forth herein t lets;

80.   The Defendants have failed to comply with the mandate of the Extradition Clause of the United States constitution, Article IV, section 2, clause 2, and its impleting reguation under the Extration Act of 1793 which mandated that the alleged fugitive be substantially charged with a "crime" in the demanding state and, in the absence of proof that the Serial #288659LW Colt .38 Caliber revolver was operable and  capable of firing a bullet,  neither  indictment  #9954/87  nor  Arrest  #E288200021 substantially charged Plaintiff  with  a  "crime"  under  the  law  of  the  State  of  New Yorkthereby violating the Extraction Act of1793 and the Etradition Clause of the United States Constitution, for which a cause of action or redres is hereby created under the  civil  Right Acts of 1871;

## IV-FOURTH CAUSE  OF ACTION:  COMMON LAW FRAUD:

.      **81..** Plaintiff repeats andrealleges each and every statement contained in the preceded pages and paragraphs with the same force and effects s if fully set forth herein.

**82.** The arrest and extradtion of Plaintiff  Plaintiff were permeated by fraud, and the requisite fraud on the Court occurs where "it can be demonstrated, clearly and convincingly, that  the Defendants  had sentiently set in motion the some unconscionable scheme calculated to intefer with the juducial system's ability impartiality to adjudicate the underlyng matter  by improperly  influencing the trier of fact or unfairly hampering the

presentation of the opposing party's claim or defense[892 F.2d 1115, 1118 1st Cir. 1989); Davis v. wakelee, 156 U.S.680 1895);

83.. Where  a party assumes a certain position in a legal proceeding, and succeeds in maintaining  that position , it may not thereafter, simply because  its interests have changed, assumes a contrary position, specially  if it be to the prejudice of the party who has acquiesced in the position formaly taken;

84.. The defendants had taken the positition that, in the evening of 11/9/87, Plaintiff possessed and aimed at Complainant Victor Arias one specific .38 Caliber revolver which Victor Arias turned over to Defendanda Benardo blair  and which NYPD Offic-er John Silva, Sh. #2671 then  acquired from NYPD Sgt.Benardo Blair and finally vouchered under '**Voucher D12747"**  in the evening of 11/9/87[see ¶¶  , ante];

85.. The testimony of NYPD Officer John Silva that he has vouchered under **Voucher D12747"** the .38 caliber revolver he had received from NYPD Sgt. Benardo Blair in the evening of 11/9/87 [see ], **renders the contents of "Voucher D12747"** admissible as evidence  under Rule 803(10) of the Federal Rules of Civil Procedure on the grounds that, such Voucher D12747 so kept presumptively contained a record of the actual .38 caliber revolver which Victor Arias imputed to Plaintiff in the evening of 11/9/87 and the absence of  of **any entry of the .38 caliber revolver and rounds, where it would *have been found if it had been made, is now, as it was then, evidence of fraud on the state and Federal Court proper for the consideration of the jury;***

86. The defedants not only *induced  the Plaintiff  to waive extradition,* **but had arrested Plaintiff  *claiming that the .38 Caliber Revolver imputed to Plaintiff under Voucher D12747 was operable*** and that, a bullet recovered from the

body of another human being "**Came from**" the .38 Caliber revolver NYPD officer John Silva had vouchered under "Voucher D12747,"  [see ] again **without** *introducing Voucher D12747 and without disclosing the contents of "Voucher D12747;*

      **87.**    *Det. Vasaturo not only*   induced the Office of the Kings Co. DA to authorize the Drafting of Criminal Complaint against Plaintiff, but had also proccured Arrest #E88200021 asserting that the .38 caliber revolver Officer Silva had vouchered under Voucher D12747 was operable and capable of discharging live ammunition, in  the absence of evidence that the actual  Serial **#288200021 .38 colt .38 two inch barrel Caliber Revolver** *impued to Plaintiff as a 'GUN RECOVERED BY CORRECTION OFFICERS ARIAS VICTOR, SH#9419" on 11/9/87 under NYPD Property Clerk's Invoice Number D12747 [EXHIBIT B-6] was operable or capable of discharge live ammution  brings both Officer Silva and Det. Vasaturo  and those acting in concert with them* within  the *principle of* common law *fraud  that when  a party asserts what he knows  is FALSE , or does not know it to be true, to another 's lost, and to his own gain, he is guilty  of fraud,-a fraud  in fact, if he knows to be false;a fraud in law ,if he does not it to be true, in violation of Plaintiff's constitutionally protected extradition rights, for which a first cause of action is hereby created under the Civil Rights Act of 1871;*

      **88..** It is Plaintiff's contention that that the presumption that probable cause existed can be overcome  where  the record is susceptable to the view that probable cause was procured through fraud, perjury, the supression of evidence or other  undertaken acts and omissions in bad faith and, "New York law has long equate the civil defendant's failure to make a full and complete

statement of the facts to … the court, or wholding back information that might have affected the results, with that defendants' initiation of a malicious prosecution."[12]

**89.** The reason why  the **certificate** as to the **authenticity of the** *affidavit or indictment  is conclusive is that the Statute of the united States  makes it so. It is  the evidence which the law requires and makes sufficient; otherwise there is no other matter involved in extradion as to which the law provides a* **criterion** *or* **rule of evidence.**  It is now invariable practice to make out requisitions and extradition warrants on printed blanks which may or may not fit the facts  of the partcular  in hand,but one thing is clear, that is, whether a recite in  an affidavit or certificate is a matter of form or substance, the governor had no right to sign his name  and set the broad  of the State  to an statement that is untrue.

**90.** The Judgment of the executive of the demanding State, or the executive of the Sending State, though entitled to get at deference, is not by any means conclusive as to the sufficiency of the cause shown for extradition. "The judicial power shall extend to all cases in **law and equity arising under this Constitution, laws of the United States and treaties made, and which shall be made under their authority."***:[2nd section on the 3rd article of the Constitution of the United States]. Any other view would make the executive  authority omnipotent, and imaculated, to a great extent, of the constitution and laws of the United states, whereby the citizen is assured that  he shall not be deprived of his* **lliberty  but by the law of the land.** To this end he may demand that **the law be strictly COMPLIED WITH,** and that is all that is involved in the <u>case sub judice</u>.

---

[12]  [Accords,<u>Ramos v. City of New York</u>, 285 A.D.2d 284 at  303 (N.Y. App. Div. 1st De't. 2001].

91.. That specific acts of fraud or other unlawful behavior heretofore outlined were committed in the process of proccurring the arrest and extradition of Plaintiff for alleged acts- or omissions which, even if arguendo found to be true, did not constitute a crime or felony under the Law of the State of New York within the purview true intent and meanings of the Extradition Clause of the United States Constitution and of the Extradition Act of 1793;

92. The fraud or other unlawful behavior herein described was committed with the intent or purpose of depriving Plaintiff of his constitutionally protected extradition rights, privilleges and immunities;

93.. The fraud and other unlawful behavior herein alleged were committed by the defendants, their agents, agenncies, employees and those acting in concert with them under color of the law of the State of Florida and of the State of New York;

94.. The fraud and other unlawful behaviors, acts and omissions herein described changed the outcome of the underlying arrest and extradition and, after plaintiff has spent over a quarter of a century in brutal confinement, an incarculable loss in view of our short tenure on earth, and after the criminal charges are finally dismissed, what civil remedy is available to Plaintiff who had lost his kidney due to improper medical care received during his tenure in the State of New York since 1988?

## V FIFTH CAUSE OF ACTION: *FALSE ARREST UNDER THE 4TH AMEND:*

95. Plaintiff repeats and realleges each and every statements contained in the preceded pages and paraphras heretofore asserted with the same force and effect as if fully set forth herein at length!'.

96.. The right of the people to be secured in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall be issued ,but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized';

### VI=<u>*SIXTH*</u> CAUSE OF ACTION: CONSPIRACY UNDER 42 USC §§1985(3):

97. Plaintiff repeats and re-alleges each and every statements heretofore asserted with the same force and effects as if fully set forth herein at length.

98.. Section 1985(3) of Title 42, United States Code, creates civil laibility against any persons who conspired to deprive other persons or class of persons of the "equal protection of the laws, or of equal privilleges and immunities under the laws," [id], and section 1988 of Title 42, USC, provides that "Jurisdiction in civil and criminal matters conferred on the District Courts by the provisions of this chapter and title 18, for the protection of persons in the United States in their civil rights, and for vindication, shall be exercised and enforced in conformity with the laws of the united States, so far as such laws are suitable to carry the same into effect..." [42 U.S.C.§1988]].

.   99..Currently and since January 11, 1988, the plaintiff herein is charged with violation of unlawful possession of a handgun pursuant to section 265.02[4[(1987) of the New York Penal Law, now and since 2006 repealed.

100. That in charging the said crime against the plaintiff, operability of the handgun underlie the charge, is an essential element of said alleged crime and that the State of New York in its trasmitted extradition papers failed to charge that petitioner knowingly arried or have in his possession a firearm.

.     101..  On May 26, 1988, Plaintiff was arrested in his domiciled in Florida  and charged  with Criminal Possession of a deadly weapon . The charged rested  on imputed pwnership possession of one .38 Caliber revolver  bearing serial #288659LW, which was turned in to the police by one off-duty NYC Correction Officer.in the evening of 11/9/87, *and the privilleges and immunities Clause  [U.S.Const. Art. IV,section 2, clouse, 1,also known as the commity Clause, prevents a state from treating citizens of  other states in a* **discrimiatory manner" [id.] and "no state shall make or enforce any law which shall abridge the privillege and immunities of citizens.. [14th Amend.].**

### VII=SEVENTH CAUSE OF ACTIO: BREACH OF CONRACT:

102. **Plaintiff**   repeats and realleges each and every statements contained in the preceded page and paragraphs with the ame force nd effeccts as if fully set forth herein at length;

**103.**  New York  General Obligations Law Section 15-501(3) provides that "[i]f an executory  accord is not performed according to its terms by one party, the other party  shall  be entitled  either  to assert his   rights  under the  claim, cause  of action, contracts  under  the  claim, cause of action, contract [or] obligation  *** which is the subject  of the accord," [id]. And, with respect to the Gravamens of Plaintiff's propose Breach of Contract Cause of Action as  a sole  benefiary of the underlying 22-pages Term and Conditions for Waiver Extradition Agreement [Exhibit A] , Plaintiff respectfully alleges that the underly contract  provides that **(a)**  the Satate of New York must trie, convict or acquit Plaintiff of the acts andomissions for which he was being extradited and **(b)** and the terms and  conditions  of the parties's agreements embodied  in a Waive of Extradition required to be filed with the Secretary

104.  Nothing has been done to divert the court of jurisdiction, as the agreement has never been consummated by the parties.[see Form 7-345 of Florida Small Claim Rules(Stipulation for Installment  Settlement, Order  Order Approving Stipulation, and Dismissal, under which proceedings are stayed by agreement while settlement  moneys are paid over time, which expressly  recognizing enforcement power)] and  Fed.R.Cip.P 41(a)(l)(ii)(stipulation of dismissal signed by all parties") and the Extradition Clause's commands are **mandatory and afford no discretion to executive officers of the asylum State and** "when  a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by refusal may have a mandamums to compel its performance;

105.  *When the accused waive extradition[see CPL 570.50],  it is a matter of arranging to  pick-up which takes up to a few weeks. If on the other hand, the accused fight extradition, the New York has to send a Governor's warrant to Florida within 90 days.*  **(a)** Plaintiff denies being charged with or convicted of a crime  under Indictment #9954/87 or arrest Warrant #E88200021 in the demanding state of New York. **A= Trial:**

106. A trial is the process by which it is determined whether the **charges made against the accused are established by proof of guilty beyond a resonable doubt.** In  the case subjudice, the City of New York, pursuant to  the instruction of the executive Office of the State of New York,  charged Plaintiff with one count of CPW-3rd, based on the Testimony of Victor and Cesar Arias, and the Indictment      9954/87 specifically charges:

" *THE GRAND JURY OF THE COUNTY OF KINGS BY THIS [9954/87]*
INDICTMENT ACCUSE THE DEFENDANT OF THE **CRIME** OF CRIMINAL
POSSESSION OF A WAPON IN THE THIRD DEGREE, AS FOLLOWS:
THE DEFENDANT, *ON OR ABOUT NOVEMBER 9, 1987, INTHE COUNTY*
**KNOWINGLY**  AND **UNLAWFULLY** POSSESSED  A LOADED FIREARM,
NAMELY, A REVOLVER, SUCH POSSESSION NOT BEING IN THE
DEFENDANT'S  **HOME OR PLACE OF BUSINESS.**
**T**HE SUBJECT MATTER OF THIS COUNT BEING AN ARMED FELONY
AS THE TERM IS  DEFINEDIN SECTION **1.20 OF THE CRIMINAL**
**PROCEDURE LAW,"**

*[re-printed  from  Kings  Co.   Indictment  #9954/87 (1/11/1988)], and  The  primary*

*objective  of  EXTRADITTION  is  the  finaladjudication/disposition  of  pending*

*charges   so  that  the  suspect  can  betried,convicted  or  acquitted  and  ultimately*

*returned  to  his  domicile  from  where  he  had  been  extradited.*

>*107.   The  22-pages  Extradition  Agreement,  pursuant  to  which  Plaintiff  was*

*transported   to   the   State   of   New   York   was   duly   executed   on   the   first   day   of*

*September,1988;   it   is   incorporate   by   reference   herein  and,  in  summary  parts,*

*proscribes  that:*

>"**Mr. Juan Candelaria, N.Y.S.I.D.: 0550784J, FBI Record#277674EA1,**
**...with**  permanent domiciles in the City of Miami Beach, in this
State of Florida, had gone on a TEMPORARY VISIT  City of New
York, Borough of Booklyn, County of Kings State of New York, with
Intention of Returning and continuing his residence in this State
Of Florida.....,"

[Exhibit A-7, ¶2] and, the parties had stipulated that  "'*no person may be lawfully*

*removed  from  one  state  to  another   by  virtues  of  this   this  U.S.  Constitution   Art.*

*IV,  section  2,  close  2,  unless  otherwise  he  is   charged  with  ...  a  crime  ..." [Exhibit*

*A-10].*

>**108.   In  Page  8 of  the  22-pages  Extradition  agreement,  the  Act  of  May**

**18, 1934, Cha. 301, 48 State 781 is cited for the proposition that:**

> *"Whoever shall knowingly transport or cause tobe transported, aid or abet in trnasporting, in the interstate or foreging commerce, any persoon who shall have been unlawfully seized,confined, inveigled, decoyed, kidnapped, abducted, or carried way by any means whatsoever and held for ranson or reward shall , upon conviction except, in the case of a minor, by a parent thereof, shll, upon conviction be punished (1) by death if the verdict  of the jury Shall so recommended \*\*\*,"*

[Exhibit A-13];

109. Article 3, pg. 12  of the 22-pages extradition agreement abrogated New York Correction Law sections 24,212,  805 (1987) and NY McKinney's Executive Law section 259-1 and proscribes that (a):

> *"Mr. Candelaria **cannot be affected, muchless convicted, by evidence, Decree, or judgment  to which he is not actually or in consideration Of law privy,"***

[Exhibit A-17].

110. Article 10, at pg. 19 of 22 provides that ;

> **'The** *demanding State of New York does not hereby acquire the Power to punish Mr. Candelaria, within the meaning of the preceded Article  6 through 9, **until after it has secured a formal Adjudication of the guilt in accordance  with Due Process Of law ….,"***

[Exhibit A-24] *and, in the event of a conviction  in compliance with due process, Article 6  proscribed  the  terms  and  condition  under  which  Plaintiff  could  be  punished [see Exhibit A-20];*

111.. Article 2 proscribed that :

> *"Mr.Candelaria  would be taken from  **and returned to this States  of Florida (at the Expense  of the Demanding  State Of New York ), to be so returned under the Uniform  Criminal Extradition  Act ….,"***

[Exhibit A-17].

*112. Plaintiff has sought enforcement of the terms and conditions of the Agreement but the defedant refused [see EXHIBIT A-29 through A-30].*

98. Where a proposed consent agreement reaches into the future and has continuing effect ," the terms require careful scrutiny presumably because a trial court is a judicial body, nort record of contract[13]].

**113. Plaintif was removed from his domicile on 9/4/1988 and was transported across state-line to the State of new York wherein he has continuously been held since then on.**

**WHEREFORE, (a)** dismissal of indictment #9954/87 and esquashing of Arrest Warrant #E88200021 as sanction for the defendant's fraudulent acts and omissions is not only appropriate on the facts but ralistic measure undertake to protect the integrity of the interstate extradition , as well as to send an appropriate message to those who would so abuse the extradition process but a range of circumstances, including the defendants's failure to to produce misteriously lost records, such as the warrant deposition/affidavit and the delay of over a **quarter of a century** in adjudicate the merit of the accusations imputed to Plaintiff under Indictment #9954/87 and Arrest Warrant

---

[13] .ACCORDS, U.S. v. City of Miami, 664 F.2d 435, at 440-441 (5th Cir. 1980)(statiting that the agreement cannot violate the "Constitution, statute , or jurisprudence") and Robertson v. Giuliani,2002 WL 253950, at 2 (SDNY Feb. 21, 2002)(contract "provided" to Court,but not file but subject to" ordered" judgment)].993 F. Supp. 225, 226; 282 N.E.2d 288 (NY 1972-Dole v.Dow Chemical Co (holding that when only one of two defendants is sued, the defendant can take action against other defendant for an equivalent apportionment of liability)]. "All counsel incivil cases shall seriously discuss the possibility of settlement a reasonable time prior to trial," [Local Rule 47.1][see also Local Civil Rule 83.11-Mediation). "When a factual circumstances negates an element crime, as heat of passion negates malice, the federal Constitution's due process guarantee under the Fifth and Fourteenth Amendments requires the prosection to ,"bear the burden of proving the absence of that circumstance beyond reasonable doubt Mullaney v.Wilbur, 421 U.S. 684,704 (1975)

**#E888200021, constitute extreme misconducts also justifying dismissal of indictment #9954/87 and squashing of Arrest Warrant #E88200021;(b) awarding Plaintiff compensatory damages in a reasonable amount of $33,000,000.00 to compensate paintiff** for the harms, in the form of short life expectancy, lost of body organ, pain and suffering, plaintiff has been enduring in the State of New York since his extradition on 9/4/1988 in bad faith; **(c) awarding Plaintiff Four time Square the amount of Compensatory Damage in PUNITIVE Damages to deter the Defendants and those acting in concert with from engaging in the acts andomissions Plaintiff is contending the Defendants have engaged in reckless disregard for the constitutionally protected extradition rights, privileges and imunities of the Plaintiff; (d) enjoining the Defendants, their agents, employees, and agencies and those acting in consent with them,** during the pendencey of this action , and permanently thereafter, from presenting false ballistic report to grand jury and to warrant-issuing m+agistrate throught out the city of New York and from withholding from Grand Jury and from  warrant-isswing magistrate evidence which tend to exonerate an accused or suspected, and **(e) dissolving the Extradition [Exhibit A] and place Plaintiff in Status quo ante prior to 9/1/1988; (f) compelling the defendants to ascertain the whereabouts of the records and informations described in paragraphs herein on the grounds  that said records and information are critical to plaintiff's proof of his claim and, without  those records and informations, the plaintiff's claims  would be irreparably prejudiced** *and the* defendant must bear the *responsibility for the loss of the records because it was required by law to preserve the same and they had failed in their  statutory duty and the imposition of those penalties*

*would deter future litigants from similar abuse;* **(g)**  *conveying a hearing on the*

*assessment of damages for breaching of the Extradition [Exhibit A] agreement, as*

*a separate element of damages, an reasonable amount for loss of the enjoyment*

*of life that plaintiff would have experience but for the acts and omissions of the*

***defendants, and (h)*** granting such other and further reliefs  as this Honorable

Article III Court deems just and proper, including issuance of an order compelling

the Defendants to return to Plaintiff the items imputed to plaintiff under NYPD

Property Clerk's Invoice Number  D12746, D12747, and D12748 [Exhibit B-4, B-5,

B-6] sheding light on the actual identity of the .38 caliber revolver, the four rounds,

the U.S. currency in the amount of $680 and the alleged white powder imputed to

Plaintiff  in the evening of 11/9/87, and Plaintiff had never before or thereafter been

charged with or accused of possessing a .38 caliber revolver under any other

circumstance, and a federal court  had so  unequivocally found in 1999.

Dated: February 28, 2018                    Respectfully Submitted,
Queens County, New York

-------------------------------------------
                    Mr. Juan Ramo, 3129 99th Street,
                    East Elmhurst, New York 11369

<u>**VERIFICATION**</u>:

  **I, Juan Ramon, d.b.a., JUAN CANDELARIA,** the plaintiff in the above-entitled

action.  I have read the foregoing "SECOND AMENEDED COMPLAINT"  and know the

contents thereof. The same are true  of my knowledge, except as to improperly spelled

words and phrases and those matters which are therein alleged on information and

believe, and as to those matters, I believe them to be true and correct.

  I declare under penalty of perjury that the foregoing is true and correct and that this

declaration was executed  at Queens, New York.

Executed on: _2 / 28_ , 2018          Respectfully Executed By:

Queens Count,New York

Juan Ramon,

3129 99thStreet, East Elmhurs,

New York 11369

**ORIGINAL**

Juan Ramon, d.b.a., JUAN CANDELARIA,
3129 99th Street, East Elmhurst,
New York 11369

Attention Pro se Office,
United States District Court,
Eastern District of Neww York,
U.s. Courthouse,
225 Cadman Plaza East,
Brooklyn, New York 11201          February 28, 2018

        Re: Juan Ramon d.b.a. JUAN CANDELARIA v. CORPORATE CITY OF NEW YORK, et a., 17-CV-2307 (KAM") (KAM)(SMG)

        Honorable Pro Se Clerk;  Evan  F. Jaffe, Esq, Assistant Corporation Attorney for the Defendant City of New York; Ryan C. Zagare., Esq., attorney of record for the City of Miami, and may it please the court and all other pertinent parties conducting business before this Honorable court. I am the plaintiff in the above captioned action and, pursuant to the direction of the Court's oral order of January 25, 2018, rendered during a telephone conference, enclosed herewith please find courtesy original copy of Plaintiff's 62-pages  Complaint, captioned as "SECOND AMENDED COMPLAINT, along with documentary evidence which Plaintiff has denominated  **EXHIBIT A through EXHIBIT D]**  for filing and processing..

        Additionally, Plaintiff respectfully requests  the clerk to issue an amended Summon to be served upon the named defendants along with a copy of the  62-pages Second Amended Complaint.

        Finally, I want to thank you in advance for your time and any consideration give to this particular  Matter. In the event you have any question from me  or have  any instruction for me to follow-up, please feel free to contact  me,  Mr. ., Juan Ramon, at 516-444-9555. Thank you and have a nice day!.                    Respectfully Submitted,

Juan Ramon, d.b.a. Juan Candelaria,

CC: JC/File;
    Ryan C. Zafre, Esq., by express mail;
    Evan F. Jaffe, Esq., by Expresss Mail;
    Clerk of Court, by hand on 2/28/2018



RECEIVED
FEB 2 8 2018
PRO SE OFFICE